**Donald PEARSON, et al.,
Plaintiffs, Appellees,**

v.

**Michael FAIR, et al.,
Defendants, Appellants.**

**Donald PEARSON, et al.,
Plaintiffs, Appellants,**

v.

**Michael FAIR, et al.,
Defendants, Appellees.**

**Nos. 86–1463, 86–1473.**

United States Court of Appeals,
First Circuit.

Argued Dec. 5, 1986.

Decided Dec. 31, 1986.

---

164

Alexander G. Gray, Jr., Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for Michael Fair, et al.

David R. Geiger with whom John H. Henn, Joseph D. Halpern, and Foley, Hoag & Eliot, Boston, Mass., were on brief, for Donald Pearson, et al.

Before CAMPBELL, Chief Judge, TORRUELLA and SELYA, Circuit Judges.

PER CURIAM.

The seeds from which the instant litigation sprouted were sown some fourteen years ago, when Mitchell G. King, Jr. brought suit in the United States District Court for the District of Massachusetts against various officials of the Commonwealth of Massachusetts. *King v. Greenblatt*, 489 F.Supp. 105 (D.Mass.). King, an individual confined at the so-called "Treatment Center" of the Massachusetts Correctional Institution at Bridgewater (MCI–Bridgewater) as a sexually dangerous person, *see* M.G.L. c. 123A, §§ 1–9, sued under 42 U.S.C. § 1983 to enjoin the administrators and staff of the Treatment Center from continuing to impose certain allegedly unconstitutional and inhumane practices and conditions upon him during his confinement. The suit was not cast in a class action mode, but sought to vindicate and protect only the rights of the named plaintiff. As a corollary measure, *King* sought to have MCI–Bridgewater institute a panoply of procedural safeguards for his benefit.

*King v. Greenblatt* was settled in 1974. In consequence thereof, Judge Wyzanski entered a consent decree on June 3, 1974, and a supplemental consent decree some eight days later. The *King* decrees, in their ensemble, provided in substance, inter alia, that the Treatment Center was to be under the primary authority of the Commonwealth's Department of Mental Health and that said Department was to exercise its authority so patients would be subject to the least restrictive conditions necessary to achieve the legitimate objectives of their commitment. Further, the decrees made it clear that solitary confinement was not to be used for the purpose of discipline or punishment; to the extent that sequestration or segregation of patients in isolation was a necessary response to inappropriate or unacceptable behavior, the same was to be effected in conformity with no less than minimum standards of procedural due process and human decency. And, the *King* decrees contained certain specifics in these respects.

At or about the time of the settlement, the state defendants voluntarily promulgated certain "Policies and Procedures Concerning Inappropriate and Unac-

ceptable Behavior" (Policies and Procedures) which they thought to be in harmony with the *King* decrees. The Policies and Procedures were attached to the supplemental consent decree as entered, but the court expressly noted that it did "not order the adoption of or specifically approve any particular set of policies and procedures." *King v. Greenblatt, supra,* supplemental consent decree at 2 (June 11, 1974). It was acknowledged that the defendants had adopted the Policies and Procedures "without objection by plaintiff," and that the defendants deemed the same "to be in conformity with" the imperatives of the decrees. *Id.* Judge Wyzanski added a handwritten note to the effect that "the right to amend this decree is retained by the Court." *Id.*

For aught that appears of record, all was quiet for several years. Then, on December 21, 1981, six plaintiffs sued a bevy of Commonwealth officials seeking enforcement of the *King* decrees, an order of contempt, and mandated compliance with the Policies and Procedures. (The new case was assigned, under the district court's random lottery, to a new trier.) Although all six of the plaintiffs were individuals committed to the Treatment Center at MCI–Bridgewater as sexually dangerous persons pursuant to M.G.L. c. 123A, §§ 1–9, King himself did not enter the fray. Once again, no class certification was pursued.

It would serve no useful purpose painstakingly to detail what transpired over the next four and one-half years [1]; it is what did *not* occur which is pivotal here. Suffice it to say that, after various (inconclusive) hearings before a magistrate (*see infra* n. 3), a series of conferences involving the parties and the district judge, and some protracted settlement negotiations (which aborted at the eleventh hour), the district court summarily entered a final order on April 4, 1986, purporting to dispose of all pending matters. The order, in its entirety, is annexed hereto as Appendix A. The court rendered no explanation of the *ratio decidendi* for the order and made no findings (written or oral). The defendants appealed; the plaintiffs, although apparently willing to abide by the order, filed a protective cross-appeal (that is, if the portion of the order which places the force of federal law behind the Policies and Procedures is vacated, then, the plaintiffs argue, the denials of their sundry motions should likewise be reopened).

■ We recognize that the district court, disappointed by the failed settlement and mindful that the plaintiffs' grievances had been hanging fire for a long period of time, was seeking to conclude matters fairly and expeditiously. Yet, our examination of the record in this case leaves us little choice but to vacate the April 4, 1986 order. The district court acted in the absence of any demonstrated emergency, and on a final (rather than an interlocutory) basis. In its efforts to resolve a knotty matter, the court below was too precipitate. It disposed of the merits of the controversy without affording the litigants an opportunity to present evidence as to whether or not the Treatment Center had complied with the *King* decrees. Ancillary thereto, the court imposed upon MCI–Bridgewater, *as a matter of federal law*, the strictures of the Policies and Procedures—and it did so without any reasoned analysis of these rules or of the need (if any) to freeze them in place. The district court offered the parties no glimpse of the infrastructure of the April 4 order: there were no articulated findings of fact or conclusions of law. It exceeded the bounds of its discretion in fashioning definitive relief without taking any evidence; it also neglected to heed the command of Fed.R.Civ.P. 52(a) ("In all actions tried upon the facts without a jury ..., the court shall find the facts specially

---

**1.** One item deserves specific comment. Following a suggestion urged by the district judge, the defendants on November 19, 1985 filed a document (somewhat mysteriously designated as a "stipulation," though no one else's agreement was required) which served to modify the Policies and Procedures in certain respects. The reference in the April 4, 1986 order, *see* Appendix A, to "Revised Policies and Procedures," commemorates these modifications.

and state separately its conclusions of law thereon....").[2]

■ These shortcomings cannot be justified merely by pointing to the *King* decrees and to the district court's reservation therein of power to amend. In the first place, the present plaintiffs eschewed any attempt to intervene in the *King* action, *see* Fed.R.Civ.P. 24, and Mitchell King himself was not afforded any notice. Thus, the *King* decrees could not validly be amended in this proceeding. Moreover, where there is no agreement between the parties, there can be no "consent" decree. *See United States ex rel. Clark v. Gramer*, 418 F.2d 692, 694 (5th Cir.1969); *Artvale, Inc. v. Rugby Fabrics Corp.*, 303 F.2d 283, 284 (2d Cir.1962) (per curiam). A court is powerless to enlarge or contract the dimensions of a true consent decree except upon (i) the parties' further agreement or (ii) litigation of newly-emergent issues. *See Brewster v. Dukakis*, 687 F.2d 495, 501 (1st Cir.1982) (federal court lacked power to impose affirmative duties on the Commonwealth pursuant to an existing consent decree where the adverse party's legal claims were not adjudicated, the Commonwealth did not concede their validity, and the requisite findings were not set out in the record). Inasmuch as the April 4 order was nonconsensual, the parties were entitled to litigate the need for expanded relief. *Gramer*, 418 F.2d at 694. The order, entered without trial or meaningful

adjudication of any of the issues of fact or law, deprived them of this entitlement.

■ To be sure, there is a duty on the part of litigants to make it known to the trial judge that they do not wish to forgo their rights to an evidentiary hearing: a party cannot sit silently by, await the entry of judgment, and only then (having seen the result and having been disappointed thereby) bemoan the court's failure to take evidence. *Cf. James v. Watt*, 716 F.2d 71, 77–78 (1st Cir.1983), *cert. denied*, 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984). We would not permit a trial judge to be sandbagged in such an egregious way. Yet here, although the defendants could well have been less oblique in their demands, scrutiny of the record indicates that they did sufficiently apprise the district court that an evidentiary hearing was desired. Indeed, even the *plaintiffs* complained to the district judge, immediately before the April 4 order was entered, that the "case has not yet been heard on the merits. [The parties] have not taken any discovery in the case.... [T]here has been no evidence taken." Under all of the circumstances, the defense's right to an evidentiary hearing[3] before the district court was adequately protected.

For these reasons, the defendants' appeal and the plaintiffs' cross-appeal are both sustained. The district court's order of April 4, 1986, is vacated. The case is remanded to the district court for further proceedings. Upon remand, under our

---

**2.** In the absence of extraordinary circumstances—and there were none here—a district court must comply with Rule 52(a) whenever deciding a case tried upon the facts to the bench (or, for that matter, when entering interlocutory injunctions); the rule is mandatory, not precatory. *Commissioner v. Duberstein*, 363 U.S. 278, 292–93, 80 S.Ct. 1190, 1200–01, 4 L.Ed.2d 1218 (1960); *H. Prang Trucking Co., Inc. v. Local Union No. 469*, 613 F.2d 1235, 1238 (3d Cir. 1980). Where, as in this case, the trial court furnishes "only conclusory findings, unsupported by subsidiary findings or by an explication of the court's reasoning with respect to the relevant facts, a reviewing court simply is unable to determine whether or not those findings are clearly erroneous." *Lyles v. United States*, 759 F.2d 941, 943–44 (D.C.Cir.1985).

**3.** There were, of course, two sets of evidentiary hearings before a magistrate in this case. These do not, however, fill the gap. The first such hearings, which took place in October of 1982, involved idiosyncratic circumstances applicable to a single patient (Gagne, one of the six named plaintiffs herein) and led to the prompt correction of the condition complained of. The case was before the magistrate again in the fall of 1983. After taking testimony, he issued a recommendation favorable to the defendants. The plaintiffs filed an objection thereto, Fed.R.Civ.P. 72(b), rendering it necessary that the district court make a *de novo* determination. *Id.* This was never done. In point of fact, the district court never had before it transcripts of either set of evidentiary sessions.

practice in kindred situations, the suit shall be assigned to a new trier. *See, e.g., Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754 F.2d 404, 430 (1st Cir.1985); *Home Placement Service, Inc. v. Providence Journal Company,* 682 F.2d 274, 281 (1st Cir.1982), *cert. denied,* 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983); *O'Shea v. United States,* 491 F.2d 774, 778–80 (1st Cir.1974). No counsel fees shall be awarded for services rendered anent these appeals. *See* 42 U.S.C. § 1988. All parties shall bear their own costs.

*It is so ordered.*

### APPENDIX A

### CA 81–3219–T

### UNITED STATES DISTRICT COURT

### DISTRICT OF MASSACHUSETTS

### ORDER

April 4, 1986

TAURO, District Judge.

Plaintiff's Motion for Finding of Contempt, Sanctions, and Preliminary Injunction is denied. Plaintiff's Motion for Preparation of Transcript is denied. In all future incidents of sequestration, Defendants are ordered to comply with the Consent Decree and the Supplemental Consent Decree entered in *King v. Greenblatt,* and with Defendant's Revised Policies and Procedures Concerning Inappropriate and Unacceptable Behavior, as amended by stipulation dated November 19, 1985, a copy of which is attached to this order as Appendix.

Plaintiff's Motion for Contempt and Preliminary Injunction, filed March 14, 1986, is denied.

IT IS SO ORDERED.