875 F.2d 863
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William T. ELDRIDGE, et al., Plaintiffs-Appellants,
v.
Harold A. SIGMON, et al., Defendants-Appellees.
 No. 88-5481.
 United States Court of Appeals, Sixth Circuit.
 May 17, 1989.
 
 Before KRUPANSKY and WELLFORD, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This confusing and complicated case is concerned with a number of claims arising from separate events and activities but involving the same parties. One case was originally filed in the United States District Court in South Carolina based upon diversity jurisdiction, a number of counterclaims were filed. The other case was originally filed in the Kentucky district court on which the parties agreed to consolidate both cases. There appears to be a jurisdictional basis for these controversies in the Kentucky district court.
 
 
 2
 On February 14, 1984, plaintiff-appellant William T. Eldridge filed an action in the district court in South Carolina against Harold A. Sigmon for an amount due on a promissory note issued by the Chemical Bank. The district court held for the plaintiff on the note, and the parties no longer dispute this particular claim.
 
 
 3
 Defendant-appellee Sigmon filed five different counterclaims to Eldridge's original action. Sigmon sought $180,000 plus interest on a note issued for shares of Superior River Coal Co., Inc., and he sought $32,777.84 plus interest for plaintiff's alleged proportional contributory responsibility for a judgment entered on July 30, 1982 for unpaid severance taxes. Sigmon alleged that he had paid $72,000 toward satisfaction of the latter. Sigmon also claimed that because plaintiff owned 22.5 percent of Elmon Corporation, he was required to pay a proportional amount of Elmon's indebtedness for which Sigmon had been subject to suit. Finally, defendant sought $140,625 by reason of a judgment debt against Sigmon-Eldridge Coal Company.
 
 
 4
 It appears that a third party, U.S. Leasing Company, had obtained a judgment in the amount of some $704,000 against Sigmon and his wife, as well as two corporations in which they were interested, Sigmon-Eldridge Coal Company and Blue Grass Coal Company. Sigmon alleged that he and his wife paid $625,000 in satisfaction of this judgment. In addition, some question was raised concerning a payment of $45,000 in a separate settlement with U.S. Leasing purportedly to obtain a separate release of Eldridge's individual liability.
 
 
 5
 Without setting out in detail the balance of the counterclaims, including contentions that Eldridge should be held liable for his proportional ownership interests in certain corporations, it suffices to indicate that numerous and complex issues were raised between these parties who previously had been engaged in various coal mining operations in Kentucky.
 
 
 6
 In his reply to Sigmon's counterclaims, Eldridge denied that he was liable for any of the claimed debts. Eldridge asserted that the Superior River debt of $180,000 was cancelled by defendant for plaintiff's capital investment of $250,000 in Blue Grass Coal Company. In general, Eldridge denied or claimed to have no knowledge concerning Sigmon's counterclaims.
 
 
 7
 On January 7, 1986, Eldridge and Carl Collins filed a shareholders suit on behalf of Elmon Corporation, Superior River Coal Company, and their shareholders against Sigmon and his wife in the Kentucky district court. In this separate suit, Eldridge alleged that Sigmon operated Superior Coal and Elmon Corporation, along with his own personal business, as a single entity. They claim that Sigmon failed to account for revenues and expenses to the detriment of the remaining shareholders and creditors. Their second claim was that Sigmon mismanaged a trust fund established to pay creditors. Their third claim was that Sigmon entered settlement orders with the State of Kentucky for reclamation of mined land and Sigmon failed to abide by these orders. Sigmon's failure to adhere to the orders allegedly resulted in the imposition of criminal fines on the plaintiffs and Elmon Corporation for a total of $275,000. Finally, plaintiffs' fourth claim was that defendant converted the assets of Superior Coal and Elmon Corporation to their own benefit without notice to shareholders. This suit sought sizeable compensatory and punitive damages against Sigmon.
 
 
 8
 Sigmon, in due course, denied the allegations of the derivative complaint and asserted as defenses, among others, failure to state a claim, lack of personal jurisdiction, improper venue, statute of limitations, laches, and failure to make a demand on the corporation as required by Fed.R.Civ.P. 23.1 and Kentucky law.
 
 
 9
 After the cases were consolidated in the Kentucky district court, the parties waived a jury and proceeded with a bench trial at the suggestion of the district judge.
 
 
 10
 Despite the complexity of this case, the district court did not prepare a statement of its factual findings or set out the bases for its conclusions other than a brief statement included in its amended judgment. Not only does the district court's failure to provide a statement of facts and reasoning to support its final order contravene Fed.R.Civ.P. 52(a), it also prevents this court from reviewing the district court's decision in any meaningful and reasonable manner. See Pearson v. Fair, 808 F.2d 163, 165-66 & n. 2 (1st Cir.1986); Lyles v. United States, 759 F.2d 941, 943-44 (D.C.Cir.1985); H. Prang Trucking Co. v. Local Union No. 469, 613 F.2d 1235, 1238 (3d Cir.1980). The only claim that we can conclude is no longer in controversy is the Chemical Bank promissory note claim, which the parties have settled.
 
 
 11
 During the bench trial, the district court dismissed the shareholder derivative claims because plaintiff failed to allege in his complaint that a demand was made on the board of directors as required by Fed.R.Civ.P. 23.1 and Ky.Rev.Stat. Sec. 271A.245. We are puzzled about this unexplained decision. Sigmon's eighth defense in its answer was Eldridge's failure to plead that demand was made; nevertheless, this issue was decided in the midst of the bench trial. Eldridge, in addition, claimed demand was futile because Sigmon owned more than fifty percent of both corporations and the allegations were straightforward fraud and self-dealing claims against the person who unilaterally controlled the corporations' actions. The district court rejected this futility assertion without explanation. We reverse and remand this question for further consideration.
 
 
 12
 The district court made a number of decisions on the various other claims and counterclaims. We find no expression of the reasons why the district court reached decisions made which are now on appeal. We note that the district court held that Sigmon was entitled to counterclaims on amounts that he claimed to have paid which were contested and uncertain. We find that it was error under the circumstances to have decided these issues without requiring Sigmon to present documentary or other satisfactory proof of such payments.[1] Some proof was taken informally, moreover, without an adequate record upon which this court can make a reasonable assessment upon appeal.
 
 
 13
 We cannot, therefore, reach the merits of this complex dispute. We regret the necessity of requiring the parties to retry this case, but we find no alternative after hearing oral argument and based on the state of the record. We must therefore remand all issues, including the stockholder derivative claims, for further proceedings and a new trial with the sole exception of the claim arising from the Chemical Bank promissory note.
 
 
 14
 We suggest that upon remand a district judge from Kentucky hear and decide this case because it is fraught with problems involving interpretation of Kentucky law and will necessarily require some time to try.
 
 
 15
 For the reasons stated, we REVERSE and REMAND all issues for a new trial except the one issue indicated which is no longer in controversy.
 
 
 
 [1]
 The district judge, for example, apparently accepted Sigmon's statement in chambers that he paid approximately $826,000 in satisfaction of the U.S. Leasing Corporation obligation. In his pleading, however, he stated that he had paid only $625,000 to satisfy that obligation