JOHN F. THIBBITTS & another [1] vs. RICHARD P. CROWLEY, trustee.[2]

Barnstable.  March 6, 1989. — June 22, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Civil*, Appeal, Agreement for judgment. *Judgment*, Consent judgment, Amendment, Relief from judgment. *Contract*, Sale of real estate, Specific performance. *Jurisdiction*, Specific performance. *Waiver*. *Estoppel*.

A delay of over one year in the entry of the defendant's appeal from the judgment in a civil action did not render the appeal untimely, where the delay was attributable in part to the plaintiff's opposition to the defendant's efforts to perfect an appeal, and, in any event, was not attributable to the defendant's actions. [223-225]

In an action for specific performance of a contract for the sale of land, a Superior Court judge exceeded his authority by modifying the terms of a consent judgment upon the ex parte application of one of the parties who had consented to the judgment. [226-229]

In a buyer's action seeking specific performance of a contract for the sale of land, the seller, by conveying the land under the compulsion of a court order, did not waive his objections to the order, nor could the buyer, knowing that the seller objected to the order, properly claim that the seller was estopped to assert his objections on appeal. [229-230]

In the circumstances of a civil action, the appropriate remedy for a party's involuntary conveyance of certain land pursuant to the erroneous order of a Superior Court judge was reconveyance of the land. [230]


CIVIL ACTION commenced in the Superior Court Department on July 12, 1985.

Judgment by assent of the parties was entered by *Francis W. Keating*, J., and a postjudgment motion to enlarge the time for performance was heard by him.

---

[1] South Cape Industrial Park, Inc. We shall refer to the plaintiff in the singular, as John F. Thibbitts was the principal actor involved.

[2] Of the Mashpee Industrial Park Realty Trust.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jerome M. Leonard* (*Elizabeth Paine* with him) for the defendant.

*Paul D. Gallese* (*David K. Moynihan* of New Hampshire & *Silvia M. Purins* with him) for the plaintiffs.

ABRAMS, J. The plaintiff (buyer) brought this suit to obtain specific performance of a contract for the sale of some thirty-four acres of land in Mashpee. During trial the parties (both lawyers) reached agreement and the judge entered a consent judgment. The judgment provided that the conveyance was to take place on or before March 9, 1987; that time was of the essence; and that if the conveyance did not take place by March 9, title would remain in the defendant (seller) free and clear of all claims of the plaintiff. When the attempted conveyance on March 9 failed to go through, the plaintiff obtained an ex parte order extending the deadline to March 23, 1987. The defendant conveyed the property to the plaintiff on March 23, 1987, for $1,250,000. At issue is the judge's authority to modify or amend the consent judgment between the parties.[3] The defendant argues that the judge exceeded his authority in modifying the consent judgment by extending the deadline. The defendant concludes that, in accordance with the original judgment, title should have remained in the defendant free and clear. We transferred the case to this court on our own motion. We agree that the judge had no authority to modify the consent judgment. We therefore vacate the amended judgment and remand to the Superior Court for reconveyance of the property and for further proceedings consistent with this opinion.

1. *Timeliness of the appeal.* Before we reach the main issue, we address the plaintiff's argument that the case is not properly before us because the appeal is not timely.

Judgment entered by assent of the parties on January 8, 1987, as detailed *supra.* The parties met on March 9, 1987, to consummate the sale. At that meeting, the attorney for the

---

[3] The issue whether the judge could refuse to enter the consent judgment was not raised on appeal, and therefore is not before us.

plaintiff's bank refused to advance money unless the defendant agreed to place $140,000 in escrow to cover disputed broker's fees for which the defendant might be liable. The bank feared that if the defendant did not pay the broker, the plaintiff or the bank might be held liable. The attorney for the bank cited an Idaho case to this effect. The defendant offered to indemnify the bank, but the bank's attorney was not satisfied. The defendant would not agree to place funds in escrow, and the transaction foundered.

The plaintiff went to court the same day and, on motion, and without notice to the defendant or an opportunity for hearing, obtained an extension of the deadline from March 9 to March 23, 1987. The plaintiff alleged in his motion that the defendant's refusal to make provision for potential broker's fees contravened paragraph 6 of the consent judgment, which provided, in relevant part, that "[a]ll closing adjustments (taxes, etc.) shall be made in the manner customary in real estate conveyancing."

On March 12, 1987, the defendant moved for execution of the consent judgment. The defendant asserted that the judgment made no provision for broker's fees and that the breakdown of the sale on March 9 was not the defendant's fault. Thus, because the sale was not completed on or before March 9, title should have remained in the defendant free and clear of the plaintiff's claims, in accordance with the terms of the consent judgment.

The judge held a hearing on March 17, 1987. He told the parties to work out an agreement on the broker's fees. The defendant's attorney began to ask the judge to enter an order, but the judge interrupted him. There was no other discussion of the defendant's motion.[4] The judge did not explicitly rule on the defendant's pending motion for execution. On March 23, 1987, the defendant conveyed the property to the plaintiff.

Thereafter, the defendant twice attempted to appeal. The first notice of appeal was struck on the ground that the docket

---

[4] The plaintiff points out a reference in the motion transcript to "what Your Honor has said this morning," i.e., prior to the transcribed hearing. However, there is nothing in the record to show what was said earlier.

sheet reflected no order of the court on the motion for execution. A different judge then denied the defendant's motion for execution, but a second notice of appeal was struck because it was filed more than thirty days following the entry of the consent judgment.[5] The defendant then moved a single justice of the Appeals Court, pursuant to Mass. R. A. P. 8 (e), as appearing in 378 Mass. 932 (1979), for an order that the clerk of the Superior Court enter an amended final judgment reflecting the March 9 changes in the consent judgment.[6] The amended judgment duly entered on April 13, 1988, and the defendant promptly appealed. The delay of over one year from the date of the modification is thus attributable in part to the plaintiff's own opposition to the efforts of the defendant to perfect an appeal, and in any event not to the defendant's actions.[7] This appeal is therefore timely.

[5] The ruling was erroneous. The defendant's objection was not to the consent judgment, which he was prepared to carry out on March 9, but to the modification. Moreover, "a decree made by consent of counsel, without fraud or collusion, cannot be set aside by rehearing, appeal, or review." *Walsh* v. *Walsh*, 116 Mass. 377, 383 (1874). See *Kacouris* v. *Loukas*, 333 Mass. 44, 49 (1955); *Fishman* v. *Alberts*, 321 Mass. 280, 281 (1947); *United States* v. *Swift & Co.*, 286 U.S. 106, 114-115 (1932); *Pearson* v. *Fair*, 808 F.2d 163, 166 (1st Cir. 1986). Consequently, the thirty days specified in Mass. R. A. P. 4 (a), as amended, 393 Mass. 1239 (1985), did not begin to run on January 8, 1987.

The plaintiff correctly refrains from arguing that the defendant should have filed an interlocutory appeal pursuant to G. L. c. 231, § 118, as appearing in St. 1982, c. 65, to challenge the March 9 amendment. While it may have been possible for the defendant to do so, see *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 429 (1979), such appeals are not mandatory, nor are they favored. See *Pollack* v. *Kelly*, 372 Mass. 469, 470-471 (1977).

[6] The plaintiff argues that the motion under Mass. R. A. P. 8 (e) was not appropriate. Rule 8 (e) provides in part: "If anything material to either party is omitted from the record by error or accident or is misstated therein . . . the appellate court, or a single justice, on proper suggestion or on its own motion, may direct that the omission or misstatement be corrected . . . ." The purpose of the rule is to obtain a record that "truly discloses what occurred in the lower court." *Id.* The record in this case failed to disclose the undisputed facts that the consent judgment had been modified and that the defendant's motion for execution had been denied. These omissions frustrated the defendant's attempts to appeal.

[7] In addition to his two unsuccessful attempts to appeal, the defendant also twice attempted to obtain an amended final judgment from which he

2. *Authority of the judge to amend or modify a consent judgment.* The plaintiff asserts that the judge amended the consent judgment in accordance with Mass. R. Civ. P. 60 (b) (5) or (6), 365 Mass. 828 (1974).[8] Rule 60 (b) (5) and (6) provides: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment . . . for the following reasons . . . (5) . . . it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment." "[I]t is settled that such relief is extraordinary and may be granted only upon a showing of 'exceptional circumstances.'" *United States Steel Corp.* v. *Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1274 (3d Cir. 1979), quoting *Mayberry* v. *Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977).

The plaintiff contends that the defendant's conduct was inequitable, and that modification was therefore justified under rule 60 (b) (5). The plaintiff argues that the failure of the transaction was attributable to the defendant's breach of the "adjustments" clause, which, the plaintiff asserts, included broker's fees. The defendant rebuts this argument in his brief; he had no opportunity to be heard on this matter on March 9 or March 17. All the evidence in the record before us, including statements of the plaintiff and the judge at the hearing on March 17, indicates that it was the plaintiff's bank which refused to go forward, not the defendant.

It was an error to modify the consent judgment. A consent judgment is essentially a settlement agreement that is entered as a judgment. *Bryan* v. *Reynolds*, 143 Conn. 456, 460 (1956). "We are aware of no sound theory upon which it can be held that

---

could appeal. The first of these was on October 13, 1987, when the defendant moved pursuant to rule 8 (e) to correct the record to reflect the implicit denial of his motion for execution or, in the alternative, for an explicit decision on the motion. The second was in conjunction with his second notice of appeal. Thus, the defendant went to court five times in attempts to perfect his appeal.

[8] The judge did not specify the basis of his decision to extend the original deadline. We assume for the sake of argument that the plaintiff's assertion is correct.

the court has jurisdiction to modify the terms of a valid existing contract which arose solely through the voluntary act of the parties." *Moore* v. *Moore*, 389 Mass. 21, 24 (1983), quoting *Schillander* v. *Schillander*, 307 Mass. 96, 98 (1940). "And when, as in this case, the [plaintiff] made a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment, [his] burden under Rule 60(b) is perhaps even more formidable than had [he] litigated and lost." *United States Steel Corp.* v. *Fraternal Ass'n of Steel Haulers, supra.* Altering the material terms of such an agreement at the behest of one party, without the consent of the other, does violence to the second party's expectations and to the very concept of judgment by consent. The "time is of the essence" clause was a material term and part of the consideration for which the defendant gave his consent to the judgment. See *Porter* v. *Harrington*, 262 Mass. 203, 207 (1928). The "time is of the essence" clause is entitled to enforcement.

"A court is powerless to enlarge or contract the dimensions of a true consent decree except upon (i) the parties' further agreement or (ii) litigation of newly-emergent issues." *Pearson* v. *Fair*, 808 F.2d 163, 166 (1st Cir. 1986). See generally 46 Am. Jur. 2d Judgments § 688, at 840 (1969 & 1989 Supp.). An ex parte hearing is not an adequate substitute for agreement or litigation, nor could the hearing on March 17 cure the deficiencies of the March 9 hearing. Thus, it is error to "dispose[ ] of the merits of the controversy without affording the litigants an opportunity to present evidence . . . ." *Id.* at 165.[9]

---

[9] The plaintiff also argues that the defendant's refusal to pay the real estate commission was a " 'newly-emergent' issue" justifying the modification under rule 60 (b) (6). See *Pearson* v. *Fair, supra.* The parties' attorneys met before March 9 to draft a purchase and sale agreement acceptable to both parties. There was ample opportunity to explore the question of broker's fees if the plaintiff was concerned about it. Brokers' fees are ordinarily a matter of agreement between the seller and the broker. They are not adjusted and usually do not concern the buyer directly. See, e.g., *Lewis* v. *Emerson*, 391 Mass. 517, 524-525 (1984). The plaintiff does not allege that the defendant misled him or misrepresented his position on the disputed commissions. Indeed, at the March 17 hearing, the plaintiff disclaimed any concern about the broker's fees. See second paragraph, below. We conclude

The cases that the plaintiff cites do not support his position. In *Parrell* v. *Keenan*, 389 Mass. 809 (1983), we affirmed relief under rule 60 (b) where the plaintiff's insurer had assented to the judgment without authority from the plaintiff to do so. Cf. *Klimas* v. *Mitrano*, 17 Mass. App. Ct. 1004 (1984) (denial of rule 60 [b] relief affirmed despite plaintiff's attorney's lack of authority to assent where motion for relief not brought within reasonable time). Lack of consent is not at issue in the present case. In *Bowers* v. *Board of Appeals of Marshfield*, 16 Mass. App. Ct. 29, 33 (1983), the town selectmen "offered as their part of an agreement for judgment a restriction that they lacked the power to impose." The Appeals Court concluded that rule 60 (b) relief was appropriate in such a case. No such inability to perform was present in the case at bar. Cf. *King* v. *Allen*, 9 Mass. App. Ct. 821, 822 (1980) (no abuse of discretion in amending judgment to extend time for specific performance where plaintiff was prepared to perform but for newly discovered flaws in title caused by defendant's representatives, and where defendant's counsel would not be available for hearing until after time set for performance had expired). In *Zimmerman* v. *Quinn*, 744 F.2d 81, 83 (10th Cir. 1984), the modification (under Fed. R. Civ. P. 60 [b]) of the consent judgment for specific performance merely allocated costs that arose because of unforeseeable delay. It did not have the effect of abrogating a major provision of the agreement.

The plaintiff also cites to Federal cases in which rule 60 (b) was used to modify consent decrees in situations of complex,

___

that there was no newly emergent issue nor any basis to charge the defendant with inequitable behavior.

The claim that the broker's fees were "adjustments" covered in paragraph 6 of the consent judgment is without merit. "Adjustments" are certain costs such as taxes and insurance that are allocated between the parties as of the date the property is transferred. See, e.g., *Massachusetts Gen. Hosp.* v. *Boston*, 212 Mass. 20, 22 (1912). "The usual matters for adjustment between the parties to a purchase and sale agreement at the time for performance are real estate taxes for the current year, fuel bills, water charges, sewer use charges, prepaid insurance premiums where the insurance is to be assigned, rents, and anything else, such as operating expenses, that has been made subject to adjustment by agreement of the parties." M.E. Park, *Real Estate Law* § 961 (1981).

on-going injunctive relief. See *Philadelphia Welfare Rights Org.* v. *Shapp*, 602 F.2d 1114, 1120-1121 (3d Cir. 1979); *King-Seeley Thermos Co.* v. *Aladdin Indus.*, 418 F.2d 31, 35 (2d Cir. 1969). These cases do not apply to the instant case, which involves only specific performance of a discrete transaction.

3. *Waiver or estoppel.* The plaintiff argues that by going through with the conveyance on March 23, the defendant waived his objections. The plaintiff also asserts that the defendant induced him to rely on the conveyance, and that the defendant is now estopped to assert objections to the conveyance. We do not agree.

Had the defendant refused to convey the property on March 23, he would have risked contempt and perhaps lost the right to appeal. "We do not encourage disregard of court orders." *Cohen* v. *Murphy*, 368 Mass. 144, 146 (1975). "It is plain that the [defendant] cannot have [his] appeal[ ] heard here as of right while [he] persist[s] in flouting the decree of the court. *Henderson* v. *Henderson*, 329 Mass. 257 [1952]." *Ellis* v. *Doherty*, 334 Mass. 466, 468 (1956). See *Trupiano* v. *Trupiano*, 13 Mass. App. Ct. 1010, 1011 (1982). In the circumstances, the conveyance was not voluntary. See *McRae* v. *Pope*, 311 Mass. 500, 508 (1942). The defendant never abandoned his position or acquiesced in that of the plaintiff. *Johnson* v. *Brockton*, 8 Mass. App. Ct. 80, 82-83 (1979). Because the defendant did not act voluntarily, he did not waive his objection. *Cohen* v. *Murphy, supra. Perry* v. *Perry*, 329 Mass. 771 (1953). *Johnson* v. *Brockton, supra.*

The doctrine of estoppel is equally inapplicable. "[T]he doctrine of estoppel is not applied except when to refuse it would be inequitable." *Corea* v. *Board of Assessors of Bedford*, 384 Mass. 809 (1981), quoting *Boston & A. R.R.* v. *Reardon*, 226 Mass. 286, 291 (1917). "A party who has knowledge of the facts cannot rely upon estoppel because he has not been misled to his harm." *Schiller* v. *Metropolitan Life Ins. Co.*, 295 Mass. 169, 175 (1936). In the present case, the plaintiff knew that the defendant only acted under the compulsion of a court order, obtained at an ex parte hearing; that the defendant had not acquiesced in the modification of the consent judgment; and

that he could still pursue judicial review. The plaintiff's reliance on the conveyance in these circumstances was not reasonable and not attributable to inequitable conduct on the defendant's part.

We conclude that the modification of the consent judgment was error and must be set aside. "Since land is unique, and the [plaintiff] failed to show any special circumstances warranting damages [instead], reconveyance is the . . . appropriate remedy." *Kozdras* v. *Land/Vest Properties, Inc.*, 382 Mass. 34, 45 n.13 (1980). The judge may make such allowances for the passage of time and the plaintiff's improvements in the property as the judge deems equitable. *Roy* v. *George W. Greene, Inc.*, 404 Mass. 67, 72 (1989). The amended judgment is vacated and the case remanded to the Superior Court for reconveyance of the property in accordance with the terms of the consent judgment and for such other proceedings, consistent with this opinion, as are necessary.

*So ordered.*