DAVID E. HOPPE vs. LUCY A. HASKINS.

No. 89-P-664.

Suffolk. September 6, 1990. - October 17, 1990.

Present: KASS, SMITH, & GILLERMAN, JJ.

Practice, Civil, Appeal, Frivolous action. Judgment, Consent judgment, Amendment, Relief from judgment. Parent and Child, Custody of minor.

Although expressing no opinion on issues presented by a father's appeal from the denial of a motion for relief from a consent judgment in child custody proceedings, inasmuch as the issues were made moot by the parties' stipulation that the child concerned had attained his majority, this court expressed its disapproval of the plaintiff's conduct in attempting to vacate judgments approved by the court (to which he had consented·with knowledge of all the relevant facts and with the benefit of experienced counsel) without either the parties' further agreement or the litigation of newly-emergent issues. [414-416]

Costs and attorney's fees under Mass. R.A.P. 25 were imposed on a party whose appeal from the denial of a motion for relief from a consent judgment was frivolous. [416]

CIVIL ACTION commenced in the Suffolk Division of the Probate and Family Court Department on June 11, 1980.

A motion for relief from judgment was heard by Mary C. Fitzpatrick, J.

Arthur H. Goldsmith for David E. Hoppe.

Sanford A. Kowal (Kenneth M. Wright with him) for Lucy A. Haskins.

Ralph R. Bagley, for the guardian ad litem, joined in a brief.

GILLERMAN, J. This appeal from the denial of a motion for relief from a consent judgment has to do with two children born out of wedlock to David Hoppe and Lucy Haskins, one of whom (the "child") became the subject of protracted litigation between the parties. The serious trouble began in

1980 — a complaint was brought in the Probate Court by the father seeking custody of both children, who were then living with their mother. Two years later, a settlement agreement was signed, both parents and the children having the benefit of counsel. The agreement, which was carefully drafted, gave custody to the father and visitation rights to the mother and included detailed provisions for all the necessary financial arrangements. As contemplated by the agreement, a final judgment was entered on the same day which included the provision that the parties were "ordered to comply with the letter and spirit" of the agreement. The agreement was merged into the judgment. All rights of appeal were expressly waived, and the judgment was signed by counsel for the father, the mother, and the children.

In the years that followed, the relationship between the father and the child turned bitter, and in October, 1987, five and one-half years after the settlement agreement, the father brought a petition under G. L. c. 119, § 39E, alleging that the child, who was no longer living with the father, refused to obey his lawful and reasonable commands (a so-called CHINS petition).[1] The mother, now with new counsel, responded on November 4, 1987, with a battery of motions and proceedings against the father, including a complaint for the modification of the judgment, a complaint for civil contempt for failure to obey the final judgment, a motion for an emergency temporary custody order in favor of the mother, and a motion for counsel fees. The temporary order was allowed *ex parte* on November 4, 1987, and all matters were set down for a prompt hearing.[2]

Within the month, the parties reached a fresh agreement, the father being represented by the same attorney involved in the 1980 proceedings. Again a careful and comprehensive agreement was worked out and reduced to writing. The

---

[1] The other child, who attains his majority in 1993, continues to live with his father.

[2] The temporary order was not set down for hearing within the five days referred to in G. L. c. 215, § 6C, and therefore the order *expired* automatically after the statutory five-day period.

Amended Agreement, as it was called, was in substantial compliance with G. L. c. 209C, § 11, and under the provisions of that section the agreement had the "same force and effect as a judgment of the court. . . ."

The Amended Agreement resolved the father-child relationship problem by granting "permanent guardianship," including "legal and physical custody of the child" to a responsible and capable third party approved by both parents and the child, and by providing new financial arrangements. Most important, for the issues at hand, are the provisions that (i) the agreement "shall be recommended to the Court as an agreement and resolution of all outstanding disputes to date," including the mother's petition for contempt, and (ii) the parties consented to the entry of a judgment incorporating the agreement and waiving all rights of appeal. The Amended Agreement was signed on November 25, 1987, by the mother, the father and by the guardian on behalf of the child.

Several weeks later, an amended final judgment was entered which incorporated all the terms of the Amended Agreement and into which the Amended Agreement was merged. The amended final judgment modified the final judgment in the original custody proceedings brought by the father, confirmed the new guardianship of the child, and recited the obligation of the parties to carry out both the "letter and the spirit" of the Amended Agreement. It was signed by the parties, their counsel and by the guardian, and it was approved by the court. Implicit in the court's approval is the judge's finding that there has been a substantial change in circumstances and that the Amended Agreement was in the child's best interest. The mother's contempt petition was dismissed by a separate order. A separate guardianship decree was entered incorporating the Amended Agreement; it was assented to by the guardian, both parents, and the child and was approved by the court.

There matters stood for some six months. Then, on June 5, 1988, the father, with new counsel, assaulted both the Amended Agreement, which was to end all disputes, and the

amended final judgment from which there was to be no appeal. His choice of weapons was Mass.R.Dom.Rel.P. 60.

The thrust of the father's nine-page "verified motion for relief from the amended final judgment of December 17, 1987, and the incorporated amended agreement of November 25, 1987," was two-fold: the Amended Agreement and amended final judgment were defective both because of a malicious deprivation of the father's constitutional rights by the mother's counsel in obtaining the emergency order of November 4, 1987, and because those proceedings and all other prior proceedings were "infected and tainted by [the] malice [and] misconduct" of the mother's attorney (Rule 60 [b][3]), and, second, the father had chosen to exercise his "right" to withdraw his assent to the guardianship previously granted (Rule 60 [b][5] and [6]). The relief sought, therefore, was the removal of the guardian and the restoration of the father's custodial rights, as provided in the original final judgment, and the corresponding nullification of the inconsistent portions of the Amended Agreement and the amended final judgment which were inconsistent with the relief sought. Absent from the father's motion is any claim that granting the relief sought would be in the child's best interest.

Dispositive of the father's appeal is the stipulated fact that the child attained the age of eighteen years on May 19, 1990. See G. L. c. 231, § 85P. As a result, all questions presented by the denial of the father's motion have become moot. See G. L. c. 201, § 4. The father, nevertheless, asks that we express our opinion on a variety of issues presented by the record appendix of 335 pages, the appellant's brief of sixty pages (which includes the citation of more than 100 published opinions), and the appellant's reply brief of ten pages, including the citation of numerous additional published opinions. We decline to do so, except for the following brief comments which we think appropriate because of their importance to the practice of law, and because we award counsel fees to the mother.

This is not a case where the father seeks to revise custody and support arrangements because there has been a substantial change in the circumstances of the parents or the child so that a modification of the judgment would be in the child's best interest. Had that been the honest claim put forward by the father, proceedings under G. L. c. 209C, § 20, would have been entirely appropriate. Instead, the father seeks to remove the guardian and restore his custodial rights on the ground that he has changed his mind and that he has a right to do so. (There is no need to comment on the unprincipled attack on counsel to the mother.)

The arguments of the father fail to recognize the consequences of his having consented to the entry of the amended final judgment. The issue is not whether the judge abused her discretion in denying the father's rule 60 motion, but whether, given the claims of the father, the judge had any discretion at all to act on a rule 60 motion.

Only recently, *Thibbitts* v. *Crowley*, 405 Mass. 222 (1989), established that " '[a] court is powerless to enlarge or contract the dimensions of a true consent decree except upon (i) the parties' further agreement or (ii) litigation of newly-emergent issues.' " *Id.* at 227, quoting from *Pearson* v. *Fair*, 808 F.2d 163, 166 (1st Cir. 1986). Neither exception is available here. Obviously there was no further agreement of the parties, and it is equally clear that there were no "newly-emergent issues" claimed or referred to in the father's "verified" motion. The father's belated claim of a constitutional deprivation because of the absence of clear and convincing evidence as to his "unfitness" in the face of his decision to settle and not litigate is not worthy of discussion. His remaining claims — which amount to nothing more than an extended diatribe against counsel to the mother — were all visible and known to the father before he signed the amended final judgment. Indeed, before the entry of that judgment the father himself wrote to the judge complaining of the conduct of opposing counsel.

We are mindful that *Thibbitts*, *supra*, was decided after the proceedings below were concluded. It did not require the

*Thibbitts* opinion, however, to inform the father that an attempt, without good cause, or, indeed, any cognizable cause, to undo agreements entered into in good faith by the other parties, and which on their face resolved "all outstanding disputes to date," would be doomed. The father's attempt to vacate judgments approved by the court, to which he consented with knowledge of all the relevant facts and with the benefit of experienced counsel, is conduct of which we cannot approve. The denial of the motion for relief from the amended final judgment is affirmed.[3]

We conclude that this appeal was frivolous. The motion of Lucy Haskins for costs and attorney's fees in the amount of $7,000 is allowed. See *Allen* v. *Batchelder*, 17 Mass. App. Ct. 453, 460 (1984); Mass.R.A.P. 25, as amended, 378 Mass. 925 (1979).

*So ordered.*

[3]The basis for our decision also disposes of the father's claims with regard to the report of the guardian ad litem as to which the order of the single justice of this court is affirmed.