## Kelton Corporation[1] vs. County of Worcester.

Middlesex. November 6, 1997. - December 30, 1997.

Present: Abrams, Lynch, Greaney, Marshall, & Ireland, JJ.

*County,* Contract, Payment of bills, Satisfaction of judgment against county. *Judgment,* Consent judgment, Implementing settlement agreement. *Practice, Civil,* Agreement for judgment.

A Superior Court judge correctly denied a county's motion to limit the levy of an execution to the amount of funds in a particular account, in circumstances in which the county had agreed to judgment and issuance of an execution against it pursuant to the terms of a settlement agreement that had no provision limiting liability to the funds in that account: the county has a general obligation to pay the full amount of the judgment. [359-360]

Civil action commenced in the Superior Court Department on December 21, 1993.

After an agreement for judgment was entered by *Stephen E. Neel,* J., a motion to limit a levy of execution was heard by him

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John O. Mirick* for the defendant.

*Michael T. Gass* for the plaintiff.

Ireland, J. The defendant county of Worcester (county), appeals from the Superior Court's denial of its motion to limit the levy of an execution issued to the plaintiff, Kelton Corporation, doing business as Braintree Hospital (Kelton), by the Superior Court following entry of an agreement for judgment against the county and in favor of Kelton. On appeal, the county claims that it is not obligated to pay the judgment if funds are not available in an "enterprise account" set up to fund Worcester County Hospital pursuant to St. 1990, c. 88 (chapter 88).[2] The

---

[1] Doing business as Braintree Hospital.

[2] The county claims that it need not make assessments to pay the judgment if no funds are in the account, because St. 1990, c. 88, § 5, establishing the

county further argues that Kelton voluntarily assumed the contractual risk of nonpayment and that Kelton is statutorily barred from looking to assets of the county beyond those in the enterprise account.[3] Because the county waived those claims when it agreed to judgment and issuance of an execution against it pursuant to the terms of a settlement agreement, we need not address the county's claims substantively. We conclude that Kelton's recovery is not limited to funds in the enterprise account, and that the county is generally liable to Kelton for the full amount of the judgment. Thus, we affirm the denial of the motion to limit the levy.

The facts relevant to this appeal are as follows. In December, 1993, Kelton commenced an action against the county seeking payment of outstanding invoices for management and rehabilitation services that it had provided to the county in connection with the operation of the hospital (Middlesex action). The services had been provided by Kelton pursuant to two management agreements entered into by the parties in 1992.[4] Although Kelton was to be paid for its services from an "enterprise" account, established and funded pursuant to chapter 88, neither of the agreements explicitly restricted the county's liability for breach of those agreements.

The county replied to Kelton's claims by filing a counterclaim

enterprise account explicitly stated that an assessment "need not be rendered" by the county to cover any shortfalls in revenue from hospital operations.

[3] The county also claimed that despite language in the settlement agreement allowing Kelton to "initiate such procedures as [it] deem[ed] appropriate to collect" on the judgment, this court should not depart "from tradition by permitting levy of execution upon the county's property." During oral argument, counsel for Kelton stated that, in light of the recent legislation providing for the Commonwealth's obligation to satisfy valid judgments against the county, it would not force a sale of the Uxbridge courthouse. Therefore, we need not address this claim.

[4] The county entered into the management agreements with Kelton pursuant to an exception to the public bidding requirements found at G. L. c. 30B, § 1 (*b*) (28). This exception provides that the public bidding requirements do not apply to:

> "[C]ontracts entered into by a governmental body on behalf of a hospital owned by such governmental body where such contract is funded by expenditures from an operations account, so-called, or a special account, established pursuant to a special act that is maintained for the benefit of and designated with the name of such hospital." G. L. c. 30B, § 1 (*b*) (28).

for hospital losses, disputing the amount due, and asserting as an affirmative defense that its obligation to pay was limited to revenues in the "enterprise" account. In addition, the county filed a separate action in the Superior Court in Worcester seeking a declaration as to its rights and obligations under the contracts in the event the hospital closed and its licensed beds were to be transferred to other institutions (Worcester action).

Thereafter, the parties entered into a settlement agreement (1994 settlement agreement) that contemplated that: (1) the hospital would be closed; (2) the county would sell the right to apply for a replacement determination of need (DoN) for licensed beds; and (3) Kelton would be paid from the proceeds of the sale of the rights to the DoN. When the county's efforts to sell the right to apply for a replacement DoN were unsuccessful, the parties entered into a second settlement agreement (1995 settlement agreement).

Under the 1995 settlement agreement, both parties significantly compromised their respective claims. The county agreed, inter alia, to allow judgment to be entered against it for the amount of $537,572.71 with postjudgment interest,[5] to support legislation that would appropriate funds to pay Kelton, and to make "reasonable efforts in good faith" to satisfy the judgment through other means. In exchange, Kelton agreed to forbear on executing the judgment until December, 1996,[6] to assist the county in lobbying for the appropriation, and waived its rights

[5]The agreement for judgment filed pursuant to the 1995 settlement agreement, signed by counsel for both parties, provided in its entirety:

"Pursuant to Mass. R. Civ. P. 58 (a), the parties to this action hereby stipulate and agree that final judgment shall enter for plaintiff, Kelton Corporation, d/b/a Braintree Hospital on all claims in the amount of $512,572.71, plaintiff waiving all rights it may have to prejudgment interest or costs."

[6]The settlement agreement provided:

"So long as Worcester County is seeking in good faith to obtain funds through an appropriation or through the sale of the right to apply for a replacement Determination of Need, and there is a reasonable prospect of obtaining funds through these avenues, [Kelton] shall not take any other steps to satisfy the judgment. . . . If there is no reasonable prospect of obtaining funds through these avenues . . . [Kelton] shall be free to initiate such procedures as [Kelton] deems appropriate to collect the balance due on the judgment."

to collect prejudgment interest and attorney's fees. In addition, both parties dismissed, with prejudice, all claims and counterclaims pending in the Middlesex and Worcester actions, and agreed to waive their respective rights of appeal.[7] Neither the agreement for judgment, nor the settlement agreements explicitly included a provision limiting the county's liability to funds in the enterprise account.

The county's attempts to pay the outstanding judgment through a legislative appropriation or from a sale of the DoN proved unsuccessful. Therefore, the parties signed and filed a stipulation regarding execution, which provided:

> "The parties in this action, through counsel, hereby stipulate and agree that an execution shall issue, pursuant to the Agreement for Judgment entered by the court on November 15, 1995, in the amount of $512,572.71 plus interest from the date of entry of judgment as required by Mass. R. Civ. P. 54 (f)."

On August 7, 1996, Kelton obtained an execution in the amount of $557,361.31 ordering the sheriffs of the several counties as follows:

> "We command you therefore, that of the goods, chattels or land of the said judgment debtor within your precinct, you cause to be paid and satisfied unto the said judgment creditor, at the value thereof in money, with interest thereon from day of the rendition of said Judgment to date of execution the aforesaid sum, being $557,361.31 in the whole, and thereof also to satisfy yourself for your own fees."

The county subsequently moved for an order limiting the levy of execution to the enterprise account that funded the hospital. The Superior Court denied this motion on October 21, 1996, after a hearing. The court viewed the county's motion as an impermissible attempt to modify the parties' settlement agreement, and ruled that Kelton was free to "pursue all lawful

---

[7]The agreement provided: "All other claims and counterclaims in the Middlesex suit and the Worcester suit shall be dismissed, with prejudice and without costs, all parties waiving all rights of appeal."

means of satisfying its judgment." On November 15, 1996, the chief deputy sheriff advised the county that he had seized the Uxbridge courthouse, to satisfy the judgment. On November 18, 1996, he further advised the county that he would sell the Uxbridge courthouse on January 7, 1997. Sale of the courthouse was stayed on the motion of the Chief Justice for Administration and Management of the Trial Court, pending resolution of the county's appeal, or clarification of the Superior Court's order denying the county's motion to limit the levy. On December 23, 1996, after a hearing, the Superior Court issued a preliminary injunction against the sale. On appeal, the county contends that the Superior Court's denial of its motion to limit the levy of execution to funds in the enterprise account was error. We disagree.

The county, as a part of its general power to sue and be sued, has the inherent implied power to effect a settlement with Kelton by compromise in good faith of genuine claims against it. See G. L. c. 34, § 1 (county is a body politic and corporate for purposes of suit); *Prout* v. *Fire Dist. in Pittsfield*, 154 Mass. 450, 451 (1891) (municipal power to compromise disputed claims is necessarily incident to the power to sue and the liability to be sued); *Essex County* v. *Salem*, 153 Mass. 141, 142 (1891) (county is a municipal corporation capable of being sued).

Acting pursuant to that authority, the county agreed to have judgment entered against it as a further compromise with Kelton. The county does not refute the validity of the judgment, rather, it contends that the judgment may only be executed against funds in the enterprise account. A consent judgment, such as the one entered against the county in favor of Kelton, conclusively determines the rights of the parties as to all matters within its scope. See *Fishman* v. *Alberts*, 321 Mass. 280, 281 (1947) ("The great weight of authority supports the principle that [a consent judgment] is as binding and conclusive upon the parties as if it had been entered after a trial and a determination of all the issues"); *Levy* v. *Crawford*, 33 Mass. App. Ct. 932, 933 (1992) ("As a general proposition, an agreement for judgment serves as a waiver of all matters within the scope of that judgment"); *Thibbitts* v. *Crowley*, 405 Mass. 222, 227 (1989) (burden on party to modify consent judgment entered against it more formidable than had party litigated and lost). In addition, an agreement for judgment is a separate and valid

contract whereby the parties make a "free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment." *Thibbitts* v. *Crowley, supra,* quoting *United States Steel Corp.* v. *Fraternal Ass'n of Steel Haulers,* 601 F.2d 1269, 1274 (3d Cir. 1979). Therefore, any exceptions made by either party to the underlying actions are extinguished unless specifically noted in the judgment or otherwise incorporated into the judgment. See *Fishman* v. *Alberts, supra; Levy* v. *Crawford, supra; Thibbitts* v. *Crowley, supra.*

In this case, nothing in the settlement agreements or the agreement for judgment limits the county's liability to funds contained in the enterprise account. Nor do we think that such a limitation should be implied. The county claimed that its liability was limited to funds in the enterprise account as an affirmative defense in the underlying action. The county knew that the limitation was a contested issue. Because the county failed to include a limitation in any of the settlement agreements or in the agreement for judgment, it is fair to assume that it was intentionally omitted.[8] See *Herson* v. *New Boston Garden Corp.,* 40 Mass. App. Ct. 779, 792 (1996) (stating that where contract provision is not ambiguous, "the parties' rights and obligations are to be determined from contract language itself"). Thus, we conclude that the absence of any such provision fairly reflected the parties intentions. Kelton is not limited to recovering its judgment from the enterprise account, therefore, the county has a general obligation to pay Kelton the full amount of the judgment.

In July, 1998, the county will be abolished and the Commonwealth will be obligated to satisfy any valid liabilities of the county. See St. 1997, c. 48, § 1. We conclude that the judgment in favor of Kelton is a valid liability within the meaning of the statute and that the Commonwealth will, at that time, be obligated to satisfy the judgment in full.

The injunction preventing the sale of the Uxbridge courthouse shall remain in place until such time as the Legislature acts. We need not decide whether the seizure of the courthouse to satisfy

---

[8]This assumption is bolstered by the fact that in the 1995 settlement agreement, the parties agreed that, if the county were unsuccessful in raising funds through legislative appropriation or sale of DoNs, then Kelton could "initiate such procedures as [it] deem[ed] appropriate to collect the balance due on the judgment."

the county's debt was proper unless the Legislature fails to act. To ensure that Kelton is able to obtain payment of the judgment, we transfer jurisdiction of the case from the Superior Court in Middlesex County to the Supreme Judicial Court for Suffolk County pursuant to G. L. c. 211, § 4A. See *Michaud* v. *Sheriff of Essex County*, 390 Mass. 523, 536 (1983).

*Order denying motion to limit*
*levy affirmed.*