PAUL A. QUARANTO & another[1] *vs.* JOSEPH A. DiCARLO
& others.[2]

No. 94-P-333.

Suffolk. February 3, 1995. - April 13, 1995.

Present: ARMSTRONG, KASS, & GILLERMAN, JJ.

*Practice, Civil*, Agreement for judgment, Relief from judgment. *Contract*,
Sale of real estate. *Real Property*, Sale, Option.

There was no basis for a judge to grant a motion under Mass.R.Civ.P. 60
(b) for relief from judgment for the reason that one party allegedly
failed to have acted in accordance with a collateral but extrinsic agree-
ment unmentioned in the stipulation for judgment. [412-413]

CIVIL ACTION commenced in the Land Court Department
on March 13, 1990.

A motion for relief from judgment, filed on June 21, 1993,
was heard by *Marilyn M. Sullivan*, J.

*Wayne R. DiCarlo* for the defendants.
*David M. Rosen* for the plaintiffs.

KASS, J. Underlying a complaint brought in the Land
Court by the Quarantos against the DiCarlos, under G. L. c.
231A, to establish title in a parcel of real estate in Natick
(the "locus"), was a history of reciprocal charges between
the parties of theft, breach of trust, fraud, deception, and al-
tered documents. Their long-running dispute culminated in
the filing on May 6, 1993, of an agreement for judgment
which, in its entirety, said:

"Now come the parties and hereby stipulate and agree
that judgment be entered on all counts in favor of the
defendants, with prejudice and without costs."

[1] Frances V. Quaranto
[2] John DiCarlo, Gina DiCarlo, James C. DiCarlo, and Mario DiCarlo.

Approximately one month later, the Quarantos filed a motion for relief from judgment under Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974), based on a written agreement of the parties dated April 2, 1993, signed for them by their respective lawyers.

A judge of the Land Court allowed the motion for relief from judgment and made certain orders concerning funds held in escrow by counsel for the DiCarlos, who have appealed. We think relief from judgment based on understandings not contained in or referred to — even inferentially — in the agreement for judgment was improvidently granted. We then consider the April agreement of the parties and decide that the DiCarlos acted in accordance with its provisions.

1. *Allowance of the motion for relief from judgment.* Although not so characterized, we take the Quarantos motion for relief from judgment as having been made under paragraph (b)(6) of Mass.R.Civ.P. 60, "any other reason justifying relief from the operation of the judgment." No other category of rule 60 would have been pertinent. See, e.g., *Parrell* v. *Keenan*, 389 Mass. 809, 815 (1983). See generally Smith & Zobel, Rules Practice § 60.15, at 485-486 (1977); 7 Moore, Federal Practice § 60.27 (1983).

There is no evidence suggesting that either the fact or content of a collateral agreement between the parties was called to the attention of the trial judge when the agreement for judgment was filed. Within the text of that agreement there is no reference to any external understanding incorporated in or related to the agreement. In *Thibbitts* v. *Crowley*, 405 Mass. 222, 226-229 (1989), the court said that it was error, in the guise of acting on a rule 60(b) motion, to modify a consent judgment. *Id.* at 226-227.[3]

If a court may not relieve parties of a consent judgment that spells out the terms of settlement, there is even less basis for relief from judgment on the basis of alleged failure to act

---

[3]In the course of the *Thibbitts* opinion the court illustrated the exceptional circumstances under which an agreement for judgment or consent judgment might be vacated.

in accordance with a collateral but extrinsic and unmentioned agreement. See *Kokkonen* v. *Guardian Life Ins. Co.*, 114 S.Ct. 1673, 1677 (1994). This is so for the simplest of reasons: the extrinsic agreement is not part of the judgment which anyone examining the docket or documents in the case would find. The point is not a mechanical one, as the instant case illustrates. In their complaint, the Quarantos had questioned the validity of the DiCarlos' record title to the locus. The filing of the judgment in favor of the defendants had the effect of adjudicating the title question. Parties to the litigation and third persons who rely on the outcome of the litigation are entitled to think of the issues in controversy as closed (the time for appealing from the judgment had lapsed) and to act accordingly.

What the Quarantos really want is not an alteration of the judgment, but enforcement of an underlying settlement agreement which they say paved the way for the judgment. Enforcement of such a settlement agreement is more than a continuation of the action in which the judgment was entered; it has its own basis for jurisdiction. *Kokkonen* v. *Guardian Life Ins. Co.*, 114 S. Ct. at 1675-1676.

For these reasons, the motion for relief from judgment was erroneously allowed, and the order purporting to modify the judgment is vacated.

2. *The settlement agreement.* No proper jurisdictional basis was established by the Quarantos for consideration of the extrinsic settlement agreement. The parties have argued the question and, in the interest of avoiding another round of litigation in an already protracted controversy, we state our views as to whether the DiCarlos acted in accordance with that agreement.

The settlement agreement provided Frances Quaranto with three options concerning the locus, 56 Felch Road, Natick. *First*, she could buy the locus for $124,000 before April 30, 1993; *second*, by that same date she could buy the property for $134,000, to be paid for by $34,000 cash and $100,000 by a promissory note to the DiCarlos, secured by a second mortgage; or, *third*, to vacate the property by April 30, 1993,

in which case the DiCarlos would pay to Quaranto $9,000, plus an amount of $6,240.52 that Quaranto had previously paid to the DiCarlos under the settlement agreement. Option three stated the further condition that, "If the property is not vacated as provided, then the funds due under this paragraph shall be forfeited."

Quaranto failed to purchase the locus and did not vacate it until May 31, 1993, one month after the deadline. She requested from the DiCarlos the amount payable under option three. The DiCarlos refused on the ground that Quaranto had not exercised option three within the specified time limits, i.e., by April 30, 1993. Whether Quaranto was entitled to that approximately $15,200 was the subject of the improvident motion for relief from judgment. As the Land Court judge saw it, Quaranto's departure from the locus one month late did not cause the DiCarlos to sustain $15,200 worth of damages. She viewed the proviso of option three as imposing a penalty and, on the strength of that conclusion, entered her order requiring the DiCarlos to pay the $15,200 to Quaranto.

The agreement of April 2, 1993, does not, however, characterize the amount which the DiCarlos are to pay should option three be exercised as damages or as liquidated damages. Fairly read, the agreement acknowledges the DiCarlos' ownership and provides that Quaranto shall either buy the locus or leave by April 30, 1993. Should Quaranto not exercise any of the three options, the agreement provides for a $1,500 per month use and occupation charge as well as certain other reimbursements.

To induce Quaranto to depart by April 30 should she not exercise either of the purchase options, the DiCarlos extended a $15,200 carrot. Quaranto's failure to do that which would have entitled her to seize the carrot does not mean that the carrot was turned into a stick with which the DiCarlos beat her. See *Factory Realty Corp.* v. *Corbin-Holmes Shoe Co.*, 312 Mass. 325, 331 (1942), in which the court observed, "The contract was an alternative one, whereby the defendant was given an option either to perform or to cancel

after a fixed period and to meet certain conditions . . . ."[4] When exercising an option, as we have frequently had occasion to say, the optionee, who has a unilateral right, must turn the corners of the option squarely. See, e.g., *Westinghouse Bdcst. Co.* v. *New England Patriots Football Club, Inc.*, 10 Mass. App. Ct. 70, 73 (1980). In context, a miss by a month was a miss by a mile. Encouraging departure by a certain date was at the core of option three and, in such circumstances, it was not necessary to state expressly that time was of the essence of the agreement. *Preferred Underwriters, Inc.* v. *New York, N.H. & H.R.R.*, 243 Mass. 457, 464 (1923). See *American Oil Co.* v. *Katsikas*, 1 Mass. App. Ct. 437, 439 (1973). Option three laid out a reward for which certain performance was prescribed. "[T]he proper course is . . . not to undertake to be wiser than the parties. . . ." *Guerin* v. *Stacy*, 175 Mass. 595, 597 (1900). See also on that note, *Factory Realty Corp.* v. *Corbin-Holmes Shoe Co.*, 312 Mass. at 332.

*Order granting relief from judgment vacated.*

---

[4]As to what constitutes a penalty, rather than damages, see *A-Z Servicenter, Inc.* v. *Segall*, 334 Mass. 672, 675 (1956); *Lynch* v. *Andrew*, 20 Mass. App. Ct. 623, 627-628 (1985); Restatement (Second) of Contracts § 356(1) and comment b (1981). Compare comment c.