Per Curiam.
The dispositive issue on this appeal by plaintiffs Mark Reznik (“Reznik”) and Helen Reznik (“Helen”) (collectively, the “Rezniks”) is the propriety of the trial court’s denial of their Mass. R. Civ. R, Rule 60(b)(4), motion for relief from the parties’ 2008 joint stipulation of dismissal of this action.
The improper utilization by the Rezniks of Rule 60(b) (4) to seek relief from their own voluntary case dismissal, which was based on the parties’ extensively negotiated settlement and agreement for judgment, can be fully understood only in the context of the years of needlessly protracted and acrimonious proceedings that led to that dismissal. The parties’ settlement and joint stipulation of dismissal of both this action (“Framingham case”) and another suit (“Concord case”) constituted the termination of four years of litigation vexatiously conducted by the Rezniks against the named defendants. Reznik filed three separate District Court actions against some or all of the defendants[6] for damages on what were adjudged to be meritless *2 claims,[7] pursuing two of those essentially identical actions in three separate courts over a four-year period. Although neither action ever advanced past the pretrial stage, the Rezniks inundated the defendants and the courts with hundreds of pleadings, motions, memoranda, other filings that defy description, and continuing requests for hearings on the same.[8] The problem was not simply that the motions were often unsupported in fact or law, or outrageously offensive in tone and content. An appreciable number of the Rezniks’ excessive filings were nothing more than repetitions of motions previously denied,[9] and all too many were baseless ad *3 hominem attacks on the personal character and professional integrity of the parties, their attorney, almost every judge in all three trial courts who entered any ruling adverse to the Rezniks, or other court employees.[10] Upon review, the Rezniks’ present appeal is little more than a continuation of the same.
The events relevant to this appeal began in late 2007. By that time, as the case dockets reflect, the Rezniks had already lost ground, propelled to defeat not only by their own continuing misconduct and the lack of any merit in their claims, but also by the perseverance of the defendants in maintaining their defenses. In the Concord case, the Rezniks’ escalating defiance of the court had culminated in the dismissal of their claims as a final sanction for the intentional and flagrant violation by both Reznik and Helen of a direct court order. After that dismissal, which this Division affirmed on appeal, Reznik v. Garaffo, 2008 Mass. App. Div. 58, the Rezniks faced the palpable prospect of an assessment of damages against them if the defendants prevailed in a trial of their counterclaims. In this action, the Rezniks’ misconduct in Natick had resulted in the allowance of the defendants’ motion for monetary sanctions against Reznik for discovery violations, which he was compelled to pay; in the filing of contempt complaints against both Reznik and Helen; and in a judgment for contempt against Reznik. After Reznik responded by leveling additional scurrilous charges against the judge, she recused herself, and the case was transferred to Framingham in September, 2007. On October 10, 2007, Framingham allowed the defendants’ motion for dismissal/summary judgment on all of the Rezniks’ claims, forcing the Rezniks to face a Framingham trial and potential assessment of damages against them on the defendants’ counterclaim in this case as well.
The Rezniks responded to the dismissal of their claims in this case in their usual fashion by blanketing the court in the ensuing weeks with dozens of motions, repeat motions, pleadings, letters, renewed character assassinations of past and present judges, and other assorted filings, with which, as the docket indicates, the court endeavored to keep pace. But on November 30,2007, the court issued an order that because the Rezniks had “swamped the ... Clerk’s office with improper, duplicative and low merited motions,” they were barred from filing any further motions; and that the court officers were authorized to escort Reznik from the courthouse if he returned and refused to leave on his own. The order specified, however, that Reznik *4 was authorized to appear in court to defend in this action. Trial had been scheduled for January 15, 2008.
Reznik ignored the court’s order and continued until the date of trial to file additional motions and copies of complaints against judges. On January 15,2008, Reznik was mistakenly escorted from the building by a court officer who misunderstood that portion of the court’s November 30,2007 order permitting Reznik to appear for trial. That unfortunate mistake was corrected the same day by the rescheduling of trial for February 12, 2008. Despite the immediate correction, Reznik responded to the mistake with a flurry of new motions, statements, letters, and faxes in which, inter alia, he included certain demands on the court, to be satisfied by a deadline he imposed, as a condition for his appearance at trial. On February 12, 2008, neither Reznik, nor Helen, appeared for trial on the counterclaim, and were defaulted. The Rezniks moved to vacate the defaults. Reznik retained an attorney, who filed a written appearance for “Mark Reznik” only on March 5, 2008. On March 11, 2008, that attorney and the defendants’ counsel argued the Rezniks’ motions to vacate the defaults, which were denied on March 19,2008 upon written findings and rulings by the court.
A hearing for the assessment of damages against the Rezniks was scheduled for April 9, 2008. That hearing was then rescheduled four more times upon the court’s allowances of the parties’ requests, at least two of which referenced continuing settlement negotiations. In a May 28, 2008 allowance of the last of those requests, the court ruled that an evidentiary hearing for the assessment of damages, see, e.g., Great America Leasing Corp. v. Law Office of Donald H. Jackson, Jr., P.C., 2008 Mass. App. Div. 165, 166, would go forward on June 18, 2008 if the case had not been settled.
On June 9,2008, the parties filed a “Stipulation of Dismissal” of all causes of action and claims in this case, with prejudice, without costs or attorney’s fees, and with all rights of appeal waived. The stipulation was signed by both attorneys, and by Reznik and Helen. The parties’ Stipulation of Dismissal of the Concord case was filed in that court on the same date.
The settlement peace lasted only nine months. By a “letter” dated March 14,2009 to the second Framingham judge who had denied the Rezniks’ motions to vacate their defaults,[11] Reznik directed the judge to recuse himself within “10 calendar days” or face Reznik’s submission of additional motions. Reznik’s letter conveniently ignored the fact that as the case had been settled and dismissed by the parties themselves, there was nothing from which a judge could have recused himself even if there had been valid grounds to do so. Unhampered by that reality, Reznik filed the following additional documents in April, 2009: (1) a motion for recusal of the second motion judge “as a Bold Face Liar, For Systematic Acts of Swindling, Theft of *5 Justice And Usurpation of Powers;” (2) a memorandum of “law and fact;” (3) a Mass. R. Civ. P., Rule 60(b) (4), motion “to vacate/expunge and set aside the Framingham Final Judgment being entered by the disqualified judge;” and (4) a batch of complaints Reznik mailed out in January, 2009.[12] The four submissions were based solely on Reznik’s allegations of error in presettlement rulings, appellate review of which he had waived. These included the rulings by the second motion judge in this case, prior Appellate Division rulings and decisions dating back to 2007 made by the same judge as a member of appellate panels, and even trial court rulings made by other judges.[13] The Rule 60(6) (4) motion was falsely directed to a “judgment entered” by the judge, when the only “judgment” ending the case was the parties’ voluntary stipulation of dismissal. Further, the substance of the Rezniks’ Rule 60(b)(4) motion itself impermissibly sought the vacating of predismissal rulings. The motion stated:
Now comes Mark Reznik, the Defendant-in-Counterclaim, and pursuant to the Rule 60(b) of the Massachusetts Rules of Civil Procedure moves this Court to vacate and set aside the Framingham Court Order . . . entered March 19,2008 as been [sic] void and made by a partial judge in excess of his powers. In that Order our joint [sic] with Helen Reznik [sic] Motion to remove the defaults was denied (emphasis supplied).
The judge denied the materials without a hearing on April 22, 2009. On April 24, 2009, Reznik filed a notice of appeal to this Division that expressly sought, contrary to his misstatements on this appeal, appellate review of (1) the judge’s predismissal denial on March 19, 2008 of the Rezniks’ motion to vacate the defaults, and (2) the court’s denial on April 22, 2009 of the documents based on that and other presettlement rulings. Citing School Comm. of New Bedford v. Dloughy, 360 Mass. 109, 111 (1971), the judge made the following order: “This case was resolved by a Stipulation of the parties for dismissal. There can be no appeal. These papers and his [filing fee] check are to be returned to Mr. Reznik.” Reznik filed a second notice of appeal challenging the court*s refusal to accept his first notice of appeal, which was returned to *6 him by the trial court clerk’s office.
Reznik thereafter filed a G.L.c. 211, §3 petition to a Single Justice of the Supreme Judicial Court, which was denied on July 24,2009. Reznik appealed to the full Court. On February 9, 2010, the Court issued a rescript opinion, Reznik v. District Court Dept. of the Trial Court, 456 Mass. 1001 (2010), reinstating Reznik’s Rule 60(b) appeal to this Appellate Division. The Court stated: “Reznik sought to appeal from the order denying his Rule 60(b) motion.... While we express no view on the merits of Reznik’s proposed appeal, we conclude that he was entitled to take it.” Id. This appeal followed.
1. The Rezniks’ motion for relief from judgment was brought pursuant to Mass. R. Civ. R, Rule 60(6) (4), which pertains solely to relief from void judgments. It is elementary that “[i]n the interest of finality,” McCracken v. Sears Roebuck & Co., 51 Mass. App. Ct. 184, 189 (2001), quoting Lubben v. Selective Serv. Sys., 453 F.2d 645, 649 (1st Cir. 1972), the “concept of a void judgment from which a party is entitled to relief pursuant to Rule 60(6) (4) is narrowly construed.” Lumber Mut. Ins. Co. v. Centore, 1992 Mass. App. Div. 218, 219, citing Harris v. Sannella, 400 Mass. 392, 395 (1987). See also O’Dea v. J.A.L., Inc., 30 Mass. App. Ct. 449, 455 (1991). “A judgment is void only when entered without due process of law, or by a court which lacks either subject matter jurisdiction or personal jurisdiction over” the moving party. Hamer v. Faneros, 2008 Mass. App. Div. 156, 157, quoting Lumber Mut. Ins. Co., supra at 219. See also Curly Customs, Inc. v. Pioneer Fin., 62 Mass. App. Ct. 92, 101 (2004). Based on these principles, the Rezniks’ Rule 60(b) (4) motion was so utterly devoid of merit as to be frivolous, and was properly denied.
First, there is no issue in this case as to the District Courts’ subject matter jurisdiction over the parties’ civil claims and counterclaims for money damages. G.L.c. 218, §19. Second, the Rezniks could not present any rational challenge to the trial court’s personal jurisdiction over them. Reznik commenced this suit. Helen was not only served with process, but also voluntarily submitted herself to the jurisdiction of the court, without jurisdictional reservation, by answering the counterclaim and by filing, and joining with Reznik in filing, dozens of motions. See Sarin v. Ochsner, 48 Mass. App. Ct. 421, 422-423 (2000); Colley v. Benson, Young & Downs Ins. Agency, Inc., 42 Mass. App. Ct. 527, 533 (1997).
Finally, there is no due process issue, as the parties’ stipulation of dismissal was submitted by them voluntarily, and with the representation, on the advice and over the signatures of their attorneys, to mark their negotiated, contractual settlement of the case. The stipulation was only ministerially entered on the docket by the trial court clerk to record the parties’ filing of their document. Contrary to Reznik’s blatant misrepresentation of the record in his brief, the parties’ stipulation of dismissal was never submitted to the motion judge for his review, much less his approval.[14] No hearing or other court proceeding on any aspect of the settlement, or on the stipulation, was ever requested or held. The judge did not initiate or participate in the par *7 ties’ settlement negotiations that produced the stipulation of dismissal. The judge did not sign, or in any way endorse, the stipulation. The judge’s consent to the parties’ filing, or the clerk’s entry on the docket, of the stipulation was not required, and was never requested or given. In short, the stipulation of dismissal at issue in this case was not an adjudication or judgment by the motion judge or the court to which principles of due process would have applied. “[A] settled case is an unlikely candidate for a due process argument.” Bowers v. Board of Appeals of Marshfield, 16 Mass. App. Ct. 29, 33 (1983).
2. And that is the fatal flaw in the Rezniks’ Rule 60(b) (4) motion. They are bound by nothing less than their own voluntary stipulation of dismissal and waiver of any right of appeal, which were never ordered or approved by any judge or court, or the product of any judicial action. Upon the parties’ filing of their joint stipulation of dismissal, the dismissal became the final judgment in this case, Craft v. Kane, 51 Mass. App. Ct. 648, 651-652 (2001), akin to a consent judgment or agreement for judgment, and fully binding on the parties and conclusive of their rights. Kelton Corp. v. County of Worcester, 426 Mass. 355, 359 (1997); Fishman v. Alberts, 321 Mass. 280, 281 (1947); Levy v. Crawford, 33 Mass. App. Ct. 932, 933 (1992).
Generally, a court will not modify, or relieve a party from, a stipulated judgment. Quaranto v. DiCarlo, 38 Mass. App. Ct. 411, 412 (1995).
A consent judgment is essentially a settlement agreement that is entered as a judgment.... “We are aware of no sound theory upon which it can be held that the court has jurisdiction to modify the terms of a valid existing contract which arose solely through the voluntary act of the parties.’ ... And when, as in this case, the [plaintiff] made a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment, [his] burden under Rule 60(b) is perhaps even more formidable than had [he] litigated and lost” (citations omitted).
Thibbitts v. Crowley, 405 Mass. 222, 226-227 (1989). Relief from a stipulation of dismissal may be warranted only in extraordinary circumstances involving sound evidence of actual fraud, a genuine lack of consent, or a “newly-emergent” material issue. Id. at 227-228. But even then, when a party meets the “more formidable” burden of establishing one of those grounds, he must also satisfy the remaining stringent requirements for relief under Mass. R. Civ. R, Rule 60(b) (6). Quaranto, supra at 412; Reliance Ins. Co. v. Robinson Eng’g & Constr., 1996 Mass. App. Div. 112, 113. Unlike a Rule 60(b) (4) motion for relief from a void judgment, the denial of a Rule 60(6) (6) motion to vacate a joint stipulation of dismissal rests solely within the discretion of the motion judge. Klimas v. Marano, 17 Mass. App. Ct. 1004 (1984). See Zarod v. Pierce, 26 Mass. App. Ct. 984, 985 (1988) (abuse of discretion to allow Rule 60(b)(6) motion to vacate agreement for judgment).
A consideration of the Rezniks’ arguments under Rule 60(b) (6) does not properly entail appellate review on the merits of the judge’s denial of their motions to vacate the defaults, or of any other ruling or decision made prior to the parties’ stipulation of dismissal. Despite the Rezniks’ efforts to treat this as a substantive appeal of pre-dismissal rulings, the Rezniks waived that appeal in stipulating to the dismissal of *8 this case.[15] They cannot avoid that waiver simply by ignoring it and demanding the very appellate review that they contractually forfeited. The Rezniks could resurrect their right of appeal on the merits of predismissal rulings only by first establishing a Rule 60(b) basis for relief from the parties’ joint stipulation of dismissal, of which their waiver of appeal was an essential term.
3. There was no abuse of discretion in the denial of the Rezniks’ Rule 60(b) motion. The Rezniks’ primary argument to avoid their stipulation of dismissal is based on a partial misstatement in the judge’s findings and rulings denying their pre-settlement motions to vacate the defaults against them. The Rezniks characterize the judge’s misstatement as a newly emergent issue and as a component of a larger “fraud on the court” by the judge. It was neither.
The misstatement appears in a paragraph of the judge’s Rule 55(c) findings and rulings in which he describes the events following the Rezniks’ defaults.[16] The misstatement is that Helen was not represented by counsel at the motion hearing. She was, at least as the hearing progressed. But the judge’s misstatement to the contrary was irrelevant because he did not deny Helen’s or Reznik’s motion to vacate their defaults on the basis of Helen’s legal representation, or the lack thereof. The Rezniks’ argument might have made some sense if their attorney had somehow presented two separate arguments for Reznik and Helen, and the judge disregarded Helen’s. Instead, the judge’s findings and rulings indicate that he considered their *9 motions and all submitted arguments, oral and written, as pertaining to both Reznik and Helen, applied appropriate legal factors, and determined, in an exercise of his discretion, that Rule 55(c) relief was not warranted.
Utilizing Rule 60(6) (2) and Rule 59(b) standards for newly discovered evidence, a newly emergent issue or evidence permitting Rule 60(6) (6) relief from a stipulation of dismissal must be more than merely relevant. It must also be of such significance that it “likely would have affected the result.” Mitchell v. Mitchell, 62 Mass. App. Ct. 769, 775 (2005). See also VanAlstyne v. Whalen, 15 Mass. App. Ct. 340, 349-350 (1983). As noted, the judge’s mistake was not determinative of his denial of the Rezniks’ motions to vacate the defaults. It was not significant enough even to have merited a reconsideration of the denial if it had been brought to the judge’s immediate attention, and would certainly not have required a reversal of the Rule 55(c) ruling if the Rezniks had properly or timely appealed the ruling. As the statement was not dispositive, it could not, objectively or rationally, have served as a determinative factor in the settlement of this case. In short, it did not warrant Rule 60(b) (6) relief for the Rezniks.
Although the immateriality of the judge’s mistake invalidates the Rezniks’ argument, it should be noted that a “newly emergent” issue must be not only material, but also new in the sense of newly discovered. An issue or evidence is “newly discovered” only if it was “unknown and unavailable at the time of trial despite the diligence of the moving party” (emphasis supplied). Wojcicki v. Caragher, 447 Mass. 200, 213 (2006), quoting Commonwealth v. Williams, 399 Mass. 60, 64 (1987). See also Hoppe v. Haskins, 29 Mass. App. Ct. 411, 415 (1990). The diligence required is “reasonable diligence.” Cullen Enters. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 894 (1987), quoting DeLuca v. Boston Elevated Ry., 312 Mass. 495, 497 (1942). The Rezniks concede that they immediately noticed the statement in the judge’s findings that Helen had not been represented by counsel, but merely assumed that their attorney had failed to file an appearance on her behalf; that they chose not to confront their attorney about this assumed misstep of his because they wanted him to handle their settlement negotiations; and that they did not realize that it was the judges error until months later. Assuming arguendo the credibility of those statements, they reveal that the Rezniks were aware of a question about Helen’s representation at the Rule 55(c) hearing immediately after the judge’s issuance of his motion ruling and months before their stipulation of dismissal, and simply chose not to clarify the matter at that time with even a single question to their own attorney.[17] “[Mjaking a strategic choice not to pursue” an issue, Cahaly v. Benistar Prop. Exch. Trust Co., 451 Mass. 343, 367 (2008), orfailingto exercise “even *10 minimal diligence,” id., quoting Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002), precludes Rule 60(b) relief on a claim of a newly discovered issue.
4. The Rezniks also contend that they are entitled to Rule 60(b) relief from their stipulation of dismissal because they were the unknowing victims of the second motion judge’s “fraud on the court.” As best as it can be parsed, the argument is based on the following pyramid of erroneous assumptions that are unsupported by the record: that the immaterial misstatement in the motion judge’s Rule 55 (c) ruling, coupled with other trial and appellate rulings, that were adverse to the Rezniks, made by not only that judge, but also other judges, in this and the Concord case, constituted the motion judge’s “fraud on the court,” in the form of, and motivated by, that judge’s alleged bias and prejudice, which automatically and retroactively “disqualified” the judge, thereby rendering “null and void” all his predismissal rulings, requiring the parties’ independent settlement of the case to be vacated by the Rezniks.
A “fraud on the court” is a “term of art with a stringent definition.” Mt. Ivy Press, LP v. Defonseca, 78 Mass. App. Ct. 340, 349 (2010). The concept
implies corrupt conduct and embraces ‘only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.’ ... ‘[Ojnly the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court’ (citations omitted).
Winthrop Corp. v. Lowenthal, 29 Mass. App. Ct. 180, 184 (1990). A fraud on the court can be proved only by clear and convincing evidence. Hug v. Gargano & Assocs., P.C., 76 Mass. App. Ct. 520, 527 (2010). In an unavailing attempt to satisfy that burden, Reznik has offered only his extravagant exaggerations of the immaterial mistake in the judge’s Rule 55(c) findings,[18] plus his unsubstantiated allegations of bias and prejudice in various trial and Appellate Division rulings made over the last several years in this and the Concord case.
The Rezniks’ mere allegations of bias and prejudice in the rulings in question, however histrionic, are nothing more than that. None of those predismissal rulings were ever appealed or reviewed on the merits. Reznik was familiar with all of the rul *11 ings in question for months, and in some instances years, before the settlement of this case. The Rezniks could easily have proceeded to a damages assessment hearing, allowed default judgments to be entered against them, and then appealed each and every ruling of which they now complain. But as noted, they chose to escape default judgments by joining in a negotiated stipulation of dismissal of this case that included their express relinquishment of any right of appeal. Again, having contractually waived appellate review, they are restricted on this Rule 60(b) appeal to their attempt to undo that waiver and the stipulation of which it was a part. This is not a case in which concrete evidence of actual fraud has been advanced, or rulings patently fraudulent or improper on their face have been challenged. At this postdis-missal juncture, there has never been any appellate consideration, much less any reversal, vacating, or modification, of any of these predismissal rulings. Thus, the rulings stand as valid judicial decisions untainted by reversible error of law, abuse of judicial discretion, or judicial bias.
At best, the Rezniks have simply identified a number of rulings unfavorable to them. It is elementary that “the mere fact that a party suffers adverse rulings during litigation does not establish lack of judicial impartiality.” Porter v. Metrowest Automotive Resources, Inc., 2000 Mass. App. Div. 129, 131, quoting Clark v. Clark, 47 Mass. App. Ct. 737, 739 (1999). As the mere existence of adverse rulings falls short of establishing judicial bias, it fails as a matter of law to constitute clear and convincing evidence of any pernicious scheme amounting to a fraud on the court
The Rezniks’ remaining argument perhaps comes closest to revealing the lack of any valid basis for their Rule 60(b) motion and this appeal. Citing Federal caselaw, the Rezniks suggest that they are not required to establish any actual or real bias on the part of the motion judge, and that their individual perceptions of prejudice, or their personal opinion or belief that they have not “received justice,” are enough to have “disqualified” the motion judge. While the appearance of impartiality is a principal factor to be considered by a judge ruling on a motion for his or her recusal, Haddad v. Gonzalez, 410 Mass. 855, 862 (1991), the test is an objective one as to whether impartiality might “reasonably” be questioned. McCarthy v. Quirk Nissan, Inc., 2009 Mass. App. Div. 159 165. The Rezniks’ attempt to create the appearance of impartiality by leveling unfounded accusations of bias, or their self-serving and subjective assessments of impartiality, would be insufficient to require the recusal, much less the “disqualification,” of the judge.
5. Finally, the Rezniks are not entitled to appellate consideration of any issue as to their lack of competence or capacity to have participated with their attorney in the parties’ settlement negotiations, and to have consented to the stipulation of dismissal. Reznik has made conclusory assertions that he was under “duress” at the time in question; that he suffered at some point from what he has labeled “Post Trauma Development Syndrome” [sic], which, he claims, resulted from being escorted from the courthouse in January, 2008; and that Helen was recovering from a major illness suffered at an undisclosed time. But the Rezniks’ failure to advance any legal analysis and argument in their brief on the question of their individual competence or valid consent constituted a waiver of those issues. Dist./Mun. Cts. R. A. D. A., Rule 16(a) (4); Patel v. Amresco SBA Holdings, Inc., 69 Mass. App. Ct. 192, 197 (2007); Mizhir v. Carbonneau, 2010 Mass. App. Div. 57, 62; Farineau v. Easley, 2007 Mass. App. Div. 128, 132.
*12 It is sufficient, therefore, to note only that a stipulation of dismissal is essentially a contract, and “[t]he type of duress or intimidation customarily deemed sufficient to vitiate contractual consent involves a ‘wrongful or unlawful act or threafi ... which actually deprives a party of his freedom of will” (citation omitted). Turesky v. Carp, 1993 Mass. App. Div. 141, 143 (1993), quoting Delaney v. Chief of Police of Wareham, 27 Mass. App. Ct. 398, 406-407 (1989). Reznik has not argued that either his “mind and will,” or Helen’s, were “overcome” at the time of their dismissal of this action. Freeman v. Teeling, 290 Mass. 93, 95 (1935).
Similarly, the capacity to contract requires only “the ability to ‘understand the nature and quality of the transaction’ and to ‘grasp its significance.’” Maimonides School v. Coles, 71 Mass. App. Ct. 240, 251 (2008), quoting Sutcliffe v. Heatley, 232 Mass. 231, 232-233 (1919). The “true test” of a lack of capacity is whether the party is “in such a state of insanity at the time as to render him incapable of transacting the business.” Audoire v. Clients’ Sec. Bd., 450 Mass. 388, 393 n.12 (2008), quoting Reed v. Mattapan Deposit Trust Co., 198 Mass. 306, 314 (1908). See also Krasner v. Berk, 366 Mass. 464, 467 (1974). In reversing an order denying enforcement of a settlement agreement, the Appeals Court recently noted that “mental agitation” or distress, “extreme upset,” anxiety, or depression are insufficient to establish incapacity in the absence of actual evidence of “a permanent, degenerative, or long-term illness that has been diagnosed by a mental health professional.” Sparrow v. Demonico, No. 09-P-1936, (Mass. App. Ct. Sept. 3, 2010) (unpublished Rule 1:28 decision). Even then, “[w]here a person has some understanding of a particular transaction which is affected by mental illness or defect, the controlling consideration is whether the transaction in its result is one which a reasonably competent person might have made.” Id., quoting RESTATEMENT (SECOND) OF CONTRACTS, §18C, comment b (Tent. Drafts Nos. 1-7,1973). See Krasner, supra at 467-468. The parties’ joint stipulation of dismissal of this case would satisfy that test.
The denial of the Rezniks’ motion for relief from the parties’ joint stipulation of dismissal is affirmed.
So ordered.

 Reznik filed Reznik v. Garaffo et al. (Concord #0447CVO491) (“Concord case”) in the Concord District Court (“Concord”) on November 15, 2004. Less than a year later, Reznik filed Reznik v. Yelton et al. (Natick #0587CV0185), in the Natick District Court (“Natick”), but never bothered to serve the defendants with process. After this Division affirmed the trial court’s denial of Reznik’s request to waive all filing fees and costs in that case based on his unsuccessful claim of indigency, Reznik effectively abandoned the first Natick action. When the defendants later learned of the Natick suit, they promptly moved to consolidate the actions in Concord, a move that would have saved the unnecessary expenditure of time and resources that even *2 tually occurred. But Reznik filed a cross motion to consolidate the cases in Natick, a case in which he had not even served the defendants. On September 11, 2006, presumably to avoid his Mass. R. Civ. R, Rule 4®, violation in the first suit, Reznik simply commenced a new action in Natick, Reznik v. Yelton et al. (Natick #0687CV0188), on claims he admits were identical to those already pending in the Concord action. It is that second Natick case that was eventually transferred to the Framingham District Court (“Framingham”) and is now before us. After the delayed transmittal of the parties’ consolidation motions to this Division, a hearing was scheduled. But immediately prior to that hearing, the Concord case was dismissed for the Rezniks’ misconduct. Thus, there were not two cases at that point to consolidate, and we were compelled to deny the motions without prejudice. Although the defendants’ counterclaims, erroneously dismissed by the Concord court as part of its sanctions for the Rezniks’ misconduct, were reinstated, neither party renewed a motion for consolidation.

 For a description of the original claims, see Reznik v. Garaffo, 2006 Mass. App. Div. 25, 26-27.

 During this needlessly protracted pretrial period, the Rezniks also pursued numerous appeals and attempted appeals to this Appellate Division, the Appeals Court, and the Supreme Judicial Court. That the Rezniks proceeded in such an unconscionably excessive manner can be readily explained on at least one level. As noted in this Division’s 2006 per curiam opinion, the record substantiated “the validity of the defendants’ contentions that Reznik was largely motivated in commencing this action by his personal animus towards the defendants, an irrelevant sentiment improperly reiterated throughout his filings in this case. It is also clear that Reznik appears to find expression for that sentiment in any procedural maneuver, however frivolous, that will increase the defendants’. attorneys fees and litigation costs and thus redound to their financial detriment.” Reznik v. Garaffo, supra at 30 and n.12.

 For example, the Rezniks filed in just this action seven separate motions to dismiss the defendants’ counterclaim, which the trial court denied on at least three separate occasions in one month alone. The Rezniks even filed a motion for reconsideration of the denial of their motions to dismiss the counterclaim after they had been defaulted for failing to appear at the trial of the counterclaim. Other Reznik motions were filed not to obtain any needed or valid relief, but seemingly to clog the docket, or insult or harass the defendants or the court. See, for example, Reznik v. Garaffo, supra at 33 (repeated filing of unnecessary motions for typewritten “clarification” of judge’s handwritten order to which Reznik had already responded). Even on this appeal, in which the opposing parties have not been involved, Reznik has filed nearly two dozen motions, repeat motions, “letters,” statements, complaints, and requests, almost all of which were unnecessary or improper, and which have delayed disposition of this appeal.

 The dockets of all three courts are replete with Reznik’s motions for the recusal of judges on unfounded claims, of, for example, “Corruption, Bias and Prejudice,” “Extremely Low Competence Bias Prejudice and Corruption,” or “For Humiliation, Corruption and Contempt of the Law.” Reznik also sought the “disqualification” of, or imposition of Mass. R. Civ. E, Rule 11 sanctions on, the defendants’ attorney, falsely charging him in various filings with immorality, corruption, “framing” trial court judges, or conspiring with them. The trial court dockets are littered as well with Reznik’s continuing complaints of the same ilk against the defendants’ attorney and trial court judges to the Board of Bar Overseers, Judicial Conduct Commission, Massachusetts Commission Against Discrimination, Federal and State Attorneys General, the Governor and legislators. Reznik has alluded to his additional publication, on Internet websites and to other media, of his defamatory tales of “bribery,” “corruption,” and “conspiracy.”

 The March, 2009 letter was a two-page rant, complete with a supporting reference to Lewis Carroll’s “Alice in Wonderland.” The letter consisted of Reznik’s unilateral declaration that the parties’ joint stipulation of dismissal was null and void, and his clearly redundant characterizations of the judge’s presettlement rulings as a “usurpation of powers,” “brazen lies,” “outrageously cynically made brazen lies,” and brazen lies made “in a cynically bold face manner.”

 Reznik has improperly included in the appendix on this appeal copies of complaints against the judge that he mailed in January, 2009 to the Chief Justice for Administration and Management of the Trial Court of the Commonwealth, the Judicial Conduct Commission, the Massachusetts Commission Against Discrimination, Governor Deval Patrick, and United States Representative Barney Frank.

 To bridge the obvious common sense gap between prior rulings made by other judges and holding the second motion judge responsible for the same, Reznik simply fell back on one of his frequently employed fabrications — conspiracy. For example, Reznik charged, without a scintilla of evidence, that the second judge conspired with the first Framingham motion judge who issued the November 30, 2007 order, and with the hapless court officer who misunderstood that order, to deprive the Rezniks of their right to a trial on the defendants’ counterclaim. Reznik has not endeavored to reconcile this particular tale of conspiracy with the actual fact of the immediate rescheduling of trial to February 12,2008.

 Nor is there any merit in Reznik’s peculiar contention in his brief that the judge’s denial in March, 2008 of the Rezniks’ motion to vacate the defaults somehow constituted the judge’s “approval” of the joint stipulation of dismissal, which was not prepared, signed, or filed by the parties until three months later.

 A significant portion of the Rezniks’ brief on this appeal consists of a restatement of their substantive arguments on predismissal motions, and the courts rulings on the same. The Rezniks’ Rule 60(b) (4) motion itself improperly sought to vacate the denial of their Rule 55(c) motions, rulings made prior to their waiver of appeal in their stipulation of dismissal. Given their appeal waiver, and the conclusion of this case upon the parties’ voluntary dismissal, the Rezniks’ arguments on the merits of prior rulings amount to little more than an assertion that if they had only appealed, instead of settling the case, they might have prevailed on that appeal. Such a statement of “settler’s remorse” does not qualify as a basis for Rule 60(6) (6) relief from a stipulated judgment. Moreover, a Rule 60(b) motion is not a substitute for an appeal. Smith v. Arbella Mut. Ins. Co., 49 Mass. App. Ct. 53, 55 (2000).

 The paragraph stated: “When, on February 12, 2008, the default entered in this case because the Rezniks ‘failed to... defend’ (Rule 55(a)), the matter was scheduled for an assessment of damages on March 11, 2008. A hearing on damages did not take place on that day. Instead, counsel for Mr. Reznik was heard on the motion to vacate the default. (Neither Mrs. Reznik nor counsel on her behalf appeared on February 12th or March 11th.) Thus, Reznik has had ample notice that a default judgment was being sought. ... (emphasis added).” The judge correctly stated that neither Helen, nor an attorney for her, appeared on the scheduled trial day of February 12, 2008, and that Helen did not appear at the motion hearing on March 11, 2008. The judged erred in indicating that no attorney appeared for Helen on March 11, 2008. The record indicates that while the only appearance filed by the Rezniks’ attorney that appears on the docket prior to the hearing was a written appearance on behalf of Mark Reznik only, the attorney made an oral appearance for Helen as well as the hearing commenced as he was introducing himself to the court.

 The Rezniks’ allegations necessarily suggest, however, that their attorney never read the judge’s Rule 55(c) findings and rulings, or never noticed the clear mistake in the findings about his own representation of Helen. The more reasonable inference is that the attorney did read the findings, noticed the mistake, recognized its irrelevance to the judge’s analysis and ruling, and correctly deemed it insufficient even to warrant its inclusion in the Rezniks’ motion for reconsideration. Neither the Rezniks, nor their attorney, submitted Rule 60(b) affidavits on these or any other points.

 In his January, 2009 complaints, see n.12, ante, Reznik characterized that single mistake as, e.g., an “obscene falsification,” a “cynical” lie, and a “dirty trick,” perpetrated by a judge who is a “shoplifter,” a “systematic swindler,” and a “liar,” who “enthusiastically engages in discrimination,” “steals justice in a vulgar, cynical and obscene manner,” and who is “obsessed with the idea of robbing” Reznik. Reznik opined that on the basis of the mistake, the “Massachusetts public [is] doomed to see another judicial pogrom from [the judge] and similar justices, a pogrom in style and manner [sic] innocent Sacco and Vanzetti were killed by the Massachusetts Judiciary.”