NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12600

477 HARRISON AVE., LLC  vs.  JACE BOSTON, LLC, & another.[1]


Suffolk.     January 8, 2019. - November 8, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
                 & Kafker, JJ.


"Anti-SLAPP" Statute.  Constitutional Law, Right to petition
     government.  Practice, Civil, Motion to dismiss.  Abuse of
     Process.  Consumer Protection Act, Unfair or deceptive act.
     Contract, Performance and breach, Implied covenant of good
     faith and fair dealing.



     Civil action commenced in the Superior Court Department on
March 23, 2015.

     Following review by this court, 477 Mass. 162 (2017), a
special motion to dismiss was heard by Joseph F. Leighton, Jr.,
J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Andrew E. Goloboy for the plaintiff.
     Mark S. Furman (Emily C. Shanahan also present) for the
defendants.

---

     [1] Arthur Leon.  Leon is the manager of JACE Boston, LLC.
Leon and JACE Boston, LLC, are referred to individually and
collectively as the "abutters."

LENK, J.  This appeal represents yet another chapter in the ongoing saga involving these adjoining property owners.  See 477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162, 163 (2017) (Harrison I).  In March 2015, after skirmishes over a period of years in a variety of forums, the plaintiff developer filed a complaint against the defendant abutters alleging abuse of process and violation of G. L. c. 93A.  Id.  Sequential duels brandishing the "anti-SLAPP" act, G. L. c. 231, § 59H, followed.  Harrison I concerned the abutters' appeal from the denial of their special motion to dismiss the developer's complaint.  Harrison I, supra.  This clash, in contrast, involves the developer's appeal from the denial of its special motion to dismiss the abutters' amended counterclaims.  These amended counterclaims alleged breach of contract, breach of the implied covenant of good faith and fair dealing, abuse of process, and violation of G. L. c. 93A.[2]  We allowed the developer's application for direct appellate review.

The developer maintains on appeal that the motion judge erred in applying the analytical framework devised in Duracraft

_____

[2] An order denying a special motion to dismiss, pursuant to G. L. c. 231, § 59H, is immediately appealable.  See Blanchard v. Steward Carney Hosp., Inc., 483 Mass. 200, 212-213 (2019) (orders denying anti-SLAPP motion under augmented Duracraft framework immediately appealable; see Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156 [1998] [Duracraft]).

Corp. v. Holmes Prods. Corp., 427 Mass. 156 (1998) (Duracraft), and augmented in Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141, 159-161 (2017) (Blanchard I), for evaluating anti-SLAPP motions to dismiss. It argues that the judge failed to consider the evidence at each stage of the framework before proceeding to the next, and ultimately in concluding that none of the abutters' four amended counterclaims was a "strategic lawsuit against public participation," known as a "SLAPP" suit. See Blanchard I, supra at 157.

The augmented Duracraft framework was devised to be applied sequentially. That is to say, the moving party (i.e., the party bringing the special motion to dismiss, here, the developer) must demonstrate, at the threshold stage, that the claims filed against it (here, the amended counterclaims) are based solely on the moving party's petitioning activity. If the moving party (here, the developer) satisfies its burden, then the burden shifts to the nonmoving party (here, the abutters) to demonstrate at the second stage that the anti-SLAPP statute, G. L. c. 231, § 59H, does not require dismissal of its claims. The nonmoving party can do so by establishing either that the moving party's petitioning activity was a "sham" and that the nonmoving party (here, the abutters) has been injured as a result, or that its own claims are not SLAPP suits at all, i.e., they are both colorable and nonretaliatory. See Blanchard v.

Steward Carney Hosp., Inc., 483 Mass. 200, 204 (2019) (Blanchard II).

Applying the burden-shifting framework in this sequential manner to the developer's anti-SLAPP motion, we conclude that none of the abutters' contract-based counterclaims, including any portion of the counterclaim alleging violation of G. L. c. 93A, is colorable and, therefore, the abutters cannot demonstrate their claims are not SLAPP suits. The counterclaims are based on the flawed premise that an agreement for judgment ordinarily retains independent legal significance after a judgment has entered incorporating the terms of the agreement. The remaining counterclaims, alleging abuse of process and violation of G. L. c. 93A, are based solely on the developer's legitimate petitioning activities. Because they objectively burden the developer's petitioning activities in this action, we conclude that the abutters failed to demonstrate that any of their counterclaims are not retaliatory. See Blanchard I, 477 Mass. at 160. We vacate the order denying the special motion to dismiss the counterclaims, and remand the case for entry of an order allowing the motion and for further proceedings consistent with this opinion.

1. Background. Years of conflict have ensued since the developer purchased the property located at 477 Harrison Avenue in December of 2011. See Harrison I, 477 Mass. at 164-167. The

abutters repeatedly have opposed the developer's attempts to redevelop the property in a variety of legal and administrative venues.  Id. at 165.  The parties' efforts and counterefforts were outlined previously, see id. at 164-167, and it serves no purpose to detail them again here.  It is enough to say that, in 2012, the developer successfully obtained zoning relief from the zoning board of appeal of Boston (ZBA).  Id. at 165.  The abutters challenged the ZBA's decision in the Superior Court (2012 zoning appeal).

While the 2012 zoning appeal was pending, the abutters commenced a declaratory judgment action concerning an agreement between prior owners of the parties' respective properties (declaratory judgment action).  Id. at 165.  After a jury-waived trial, "a Superior Court judge ruled that this agreement . . . precluded the [developer] from demolishing the party wall between the two properties below the height specified in the [agreement]."  Id.  The Appeals Court affirmed the judgment. See JACE Boston, LLC v. Holland Dev., LLC, 89 Mass. App. Ct. 1108 (2016).

While these matters were pending, "and its redevelopment plans thereby stalled, the [developer] opted for what it hoped would be a faster path forward.  In September, 2013, as the parties' summary judgment motions awaited resolution in the [2012 zoning appeal], the [developer] abandoned its request for

zoning relief, then on appeal, to pursue instead an 'as of right project.'" Harrison I, 477 Mass. at 165. An agreement for judgment was filed in the Superior Court memorializing the abandonment. Judgment subsequently entered in the 2012 zoning appeal.

Subsequently, the developer began redeveloping the property. Even then, the parties' conflict continued. Id. at 165-166. In 2014, the developer sought additional zoning variances and a conditional use permit to add more units to the property. After a hearing on March 24, 2015, the ZBA granted the requested relief, and the abutters again appealed (2015 zoning appeal). The day before that hearing, the developer commenced the underlying action against the abutters, alleging abuse of process and a violation of G. L. c. 93A, § 11. Id. at 166. The abutters responded with a special motion to dismiss both claims, pursuant to the anti-SLAPP statute. Id. at 167. The judge denied the motion, and the abutters appealed. That appeal was the subject of Harrison I.

While Harrison I was pending, the abutters moved to dismiss the developer's (amended) complaint, pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). According to the developer, the abutters essentially claimed that the agreement for judgment in the 2012 zoning appeal precluded the developer from asserting its claims "to the extent they relate to conduct

which pre-dated the Agreement for Judgment or to conduct or legal challenges contemplated in it."  The Superior Court judge denied the motion.  Thereafter, the abutters filed an answer and counterclaims, which they purported to assert "conditionally" pending the outcome of their appeal in Harrison I.

Shortly thereafter, Harrison I was decided.  We concluded in that case that the abutters' special motion to dismiss properly was denied as to the developer's G. L. c. 93A claim, because that claim was not based solely on the abutters' petitioning activity, as G. L. c. 231, § 59H, requires.  See Harrison I, 477 Mass. at 163.  With respect to the developer's abuse of process claim, however, we vacated the order dismissing the claim and remanded the case for further proceedings in light of the augmented framework announced in Blanchard I, 477 Mass. at 159-161.  See Harrison I, supra at 163-164.  Following remand, the judge again denied the abutters' special motion to dismiss the abuse of process claim.  The abutters did not appeal from that ruling.  They, instead, filed amended counterclaims expressly removing the purportedly conditional aspect of the counterclaims.

The developer parried by filing its own special motion to dismiss the amended counterclaims, pursuant to G. L. c. 231, § 59H.  The judge denied the motion, and this appeal followed.

2. *Legal standard*. Under G. L. c. 231, § 59H, a party may file a special motion to dismiss if "the civil claims, counterclaims, or cross claims" against it are based solely on its exercise of the constitutional right to petition. The burden-shifting framework devised in Duracraft, 427 Mass. 156, and augmented in Blanchard I, 477 Mass. at 159-161, is used to evaluate such motions. At the threshold stage, the moving party (here, the developer) must demonstrate, through pleadings and affidavits, that each claim it challenges is based solely on its own protected petitioning activity, and that the claim has no other substantial basis. See Wenger v. Aceto, 451 Mass. 1, 5 (2008). If the moving party meets its burden, the burden shifts at the second stage to the nonmoving party (here, the abutters), to demonstrate that the anti-SLAPP statute nonetheless does not require dismissal.

A nonmoving party may satisfy its burden at the second stage in one of two ways. See Blanchard I, 477 Mass. at 159–160. The first path, which tracks the statutory language, requires the nonmoving party (here, the abutters) to establish "by a preponderance of the evidence that the [moving party, here the developer] lacked any reasonable factual support or any arguable basis in law for its petitioning activity," Baker v. Parsons, 434 Mass. 543, 553-554 (2001), and that the moving party's acts caused "actual injury to the responding party,"

G. L. c. 231, § 59H.  The second path, laid out in Blanchard I, requires the nonmoving party (here, the abutters) to establish, such that the motion judge can conclude with fair assurance, that its claim is not a "meritless" SLAPP suit "brought primarily to chill the special movant's [here, the developer's] legitimate petitioning activities."  Blanchard I, supra.

3.  Sequential application.  The augmented Duracraft framework is intended to be applied sequentially.  See Blanchard I, 477 Mass. at 159.  Beginning at the threshold stage, the motion judge "consider[s] the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based," and evaluates whether the party that has the burden of proof has satisfied it.  G. L. c. 231, § 59H.  Sequential application of the framework is especially significant for purposes of the newly augmented second stage of the framework.  By proceeding systematically, by the time the motion judge reaches the last step, he or she will be in a more informed position to make an assessment of the "totality of the circumstances pertinent to the nonmoving party's asserted primary purpose in bringing its claim," as the augmented framework requires.  Blanchard I, supra at 160.

Failing to apply the augmented framework to each challenged claim sequentially hampers the motion judge's ability to determine with "fair assurance" whether the challenged claims

were "'brought primarily to chill' the [moving party's] legitimate exercise of its right to petition." Blanchard I, 477 Mass. at 159-160, quoting Duracraft, 427 Mass. at 161. If the threshold stage is skipped, for example, there may not be focused consideration of the nature of the nonmoving party's claims, i.e., whether the challenged claims were "based on" the moving party's (here, the developer's) petitioning activities, and the context in which they were raised. Those considerations are relevant at the framework's second stage. While it may be tempting to skip straight to the very last step of the augmented second path of that second stage, as the motion judge did in this case, his decision to do so illustrates the risks inherent in that approach. We conclude that the developer's special motion to dismiss should have been granted.

4. Application to contract counterclaims. Counts one and two of the abutters' amended counterclaims allege breach of contract and breach of the implied covenant of good faith and fair dealing, respectively. They assert that, "[t]o the extent that [the developer's] claims in the present case arise from the 2012 Zoning Appeal, the Declaratory Judgment Action, and/or the 2015 Zoning Appeal, [the developer] breached the Agreement for [Judgment]," and the implied covenant of good faith and fair dealing implied therein.

Pursuant to the agreement for judgment, the parties agreed to "waive, abandon, forfeit, [forgo] and release, all variances, conditional use permissions and any and all other rights and relief granted by or under the Decision of the Board of Appeal of the City of Boston dated July 24, 2012," which was the subject of the 2012 zoning appeal.  For its part, the developer reserved the right to seek "the same relief previously requested and/or . . . any other relief," while the abutters reserved the right to "object and challenge such permit and/or zoning relief."

In addition, with the exception of a pending building permit application, the agreement for judgment provided that both parties reserved "their rights to object to and/or appeal from any pending, issued, or future building permit applications and/or zoning relief," and reserved "all rights, claims, relief and defenses which have been or may in the future be asserted" in the declaratory judgment action.  The parties acknowledged that the agreement would "have no preclusive effect as to any request by [the developer] for a building permit and/or zoning relief."  The agreement further provided that it was not to be construed as a judgment on the merits, that each party would bear its own attorney's fees and costs, and that the parties waived their rights "to appeal this Agreement for Judgment."

a.  Developer's threshold burden.  The contract-based counterclaims allege that, by commencing this litigation, the developer committed a breach of the agreement for judgment in the 2012 zoning appeal and the covenant of good faith and fair dealing implied therein.  Commencement of litigation is quintessential petitioning activity.  See Harrison I, 477 Mass. at 169; Van Liew v. Stansfield, 474 Mass. 31, 36 (2016); Duracraft, 427 Mass. at 168 n.20; Ehrlich v. Stern, 74 Mass. App. Ct. 531, 538 (2009).  We conclude, in addition, that the developer met its burden of establishing that "that the only conduct complained of is petitioning activity," Wenger, 451 Mass. at 6, and that there is no "substantial nonpetitioning basis" for the claims, Harrison I, supra.

We recognize that, even where petitioning activity is involved, a claim for breach of contract (or breach of the implied covenant of good faith and fair dealing) sometimes may present a substantial basis other than the petitioning activity itself for purposes of the anti-SLAPP act.  See Duracraft, 427 Mass. at 165-168.  In this case it does not.  The proposed contract -- the agreement for judgment -- was negotiated in the context of ongoing litigation, was filed in court, and sought relief from the court, and judgment entered in accordance with its terms.  The agreement for judgment, and what flowed from it, are petitioning activities.  Other than those activities, there

is no conduct that would provide a "substantial basis" for the abutters' counterclaims. The developer crossed Duracraft's threshold stage, and successfully invoked the anti-SLAPP statute's protection.

b. Abutters' second-stage burden. At the second stage, the burden shifts to the abutters to demonstrate in one of two ways that the anti-SLAPP statute does not require dismissal of their counterclaims.

i. Statutory first path. With regard to the statutory first path, the abutters contend that both counts of the developer's complaint -- alleging abuse of process and violation of G. L. c. 93A -- are "devoid of any reasonable factual support or any arguable basis in law," because the developer failed to demonstrate damages. G. L. c. 231, § 59H. See Blanchard I, 477 Mass. at 156 n.20; Baker v. Parsons, 434 Mass. 543, 553-554 (2001). As we described in Harrison I, the developer's abuse of process claim rests on six instances of petitioning activity:

> "(1) the submission of written and oral statements to the [Boston Redevelopment Authority] and the ZBA; (2) the filing of the zoning appeals in the Superior Court in 2012 and 2015; (3) the filing of the declaratory judgment action with respect to the indenture and agreement; (4) the filing of the police report; (5) the application for a criminal complaint against [the developer's building manager]; and (6) the communications with [the inspectional services department (ISD)] and various permits granted by ISD."

Harrison I, 477 Mass. at 173-174. The claim for violation of G. L. c. 93A is predicated on the same factual averments, as

well as the additional allegation that the abutters filed two false insurance claims.  Id. at 171.  In its amended complaint, the developer seeks three principal categories of damages arising out of these events:  (1) the costs associated with the delay of the property's redevelopment; (2) the loss of proposed penthouses; and the (3) loss of residential units on the building's second floor.

The pleadings and affidavits adequately establish that the claims of damage were not devoid of merit.[3]  The developer's manager attested that the abutters' conduct caused delays to the redevelopment schedule, forced the redesign of the second floor from residential use to commercial use, and resulted in the loss of windows and balconies.  The manager also attested that the loss of residential second-floor units caused the developer to

---

[3] Unlike a motion to dismiss brought under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), a motion to dismiss pursuant to the anti-SLAPP statute "does not test the sufficiency" of a claim.  477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162, 171 n.11 (2017) (Harrison I).  For purposes of the threshold determination whether the conduct concerns only petitioning activities, we consider the claims that have been pleaded.  Id.  For purposes of the second stage, we consider the pleadings, as well as the "supporting and opposing affidavits stating the facts upon which the liability or defense is based." G. L. c. 231, § 59H.  In Harrison I, supra at 174-175, for example, we concluded that the developer met its second-stage burden of demonstrating "actual injury" caused by the abutters' application for a criminal complaint, by means of an affidavit from the developer's manager stating that he suffered "embarrassment," "that he had to attend a probable cause hearing, and that he feared for the financial health of the plaintiff if the complaint had spawned criminal charges."

"suffer millions of dollars in damages." He averred that the developer has been required to "devote time and energy to addressing" false insurance claims, and that being required to attend a probable cause hearing in connection with the criminal complaint caused him embarrassment. See Harrison I, 477 Mass. at 174-175, citing Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 645, 650 (2010) (embarrassment and financial concern regarding criminal complaint constitute "actual injury" for purposes of anti-SLAPP statute).

Demonstrating that there is "no credible factual or legal basis" for the developer's claims presents a very high bar. Blanchard I, 477 Mass. at 156 n.20. The abutters failed to clear it. We cannot say that either of the claims raised in the complaint is "devoid of any reasonable factual support or any arguable basis in law." See G. L. c. 231, § 59H.

ii. Augmented second path. The final path of the augmented framework permits a litigant to avoid dismissal of its claims by establishing that its claims, although "based on" petitioning activity, nonetheless are not SLAPP suits. See Blanchard v. Steward Carney Hosp., Inc., 483 Mass. 200, 204 (2019) (Blanchard II). As applied to this case, the abutters were required to establish, such that the motion judge could conclude with fair assurance, that each counterclaim was (a) colorable, and (b) not brought with the "primary motivating

goal" of chilling the developer's exercise of its petitioning rights, i.e., that it was not retaliatory.  See id. at 204, 209. We consider the contract claims under that standard.

To demonstrate a colorable claim for breach of contract, the abutters were required to establish four elements:  an agreement between the parties, supported by valid consideration; that the abutters were ready, willing, and able to perform; that the developer committed a breach of the contract; and that the abutters sustained damages.  See Singarella v. Boston, 342 Mass. 385, 387 (1961).  A claim for breach of the implied covenant of good faith and fair dealing requires a showing that one party violated the reasonable expectations of the other party concerning the obligations of the contract.  See Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 287-288 (2007).  The motion judge summarily concluded that the abutters "adequately state[] causes of action for both breach of contract and breach of the implied covenant of good faith [and fair dealing]."  We disagree.

The parties entered into an agreement seeking entry of judgment on particular terms, i.e., a consent judgment.  See Bowers v. Board of Appeals of Marshfield, 16 Mass. App. Ct. 29, 30 (1983).  A Superior Court judge thereafter entered the parties' agreement as a judgment of the court; no provision was made that the agreement would survive the entry of judgment.

See Kelton Corp. v. County of Worcester, 426 Mass. 355, 359 (1997) ("A consent judgment . . . conclusively determines the rights of the parties as to all matters within its scope"). At that point, therefore, the parties' private agreement ceased to exist as an independent contract. See Bercume v. Bercume, 428 Mass. 635, 641 (1999) ("merger of an agreement in a judgment is a substitution of the rights and duties under the agreement for those established by the judgment or decree").

We recognize that "[t]here is in an agreement for judgment, . . . an element of contract." See Bowers, 16 Mass. App. Ct. at 34. We recognize also that that contractual element may be taken into account if a party seeks relief from judgment. See id. at 35. See also Thibbitts v. Crowley, 405 Mass. 222, 226-229 (1989) (court may not relieve parties of consent judgment that delineates terms of settlement). Absent any express provision to the contrary, however, where a judgment incorporates the terms of an agreement, it does not follow that an agreement for judgment is enforceable as a private contract following the entry of that judgment. See Kelton Corp., 426 Mass. at 360 (exceptions are "extinguished unless specifically noted in the judgment or otherwise incorporated into the judgment"); Halpern v. Rabb, 75 Mass. App. Ct. 331, 338-339 (2009) (where provisions of separation agreement merged into judgment, action for breach of agreement could not be

maintained).  Cf. Quaranto v. DiCarlo, 38 Mass. App. Ct. 411, 412-413 (1995) (where agreement for judgment did not incorporate terms of settlement agreement, agreement could be independently enforced), citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994) (where court order dismissing action incorporated settlement agreement, breach of agreement violates order; otherwise, ancillary jurisdiction absent).

While there are remedies available to the abutters if there has been noncompliance with the 2012 zoning appeal judgment, an independent action for breach of contract is not one of them. See Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 313 (1991) (civil contempt action stands as "authoritative enforcement of the consent judgment"); Sodones v. Sodones, 366 Mass. 121, 129-130 (1974) (noncompliance with court order redressed through contempt proceedings).  See also Kelton Corp., 426 Mass. at 358-359 (clarification or modification of judgment); Thibbitts, 405 Mass. at 227 (burden to modify consent judgment more formidable than if judgment had been entered after trial).

Absent evidence that the terms of the parties' agreement survive the entry of judgment, the claims for breach of contract and breach of the implied covenant of good faith and fair dealing are not colorable.  See Blanchard II, 483 Mass. at 207-209.  The abutters, therefore, failed to meet their burden at

the second stage of the augmented Duracraft framework. Accordingly, the denial of the special motion to dismiss the counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing must be vacated.

5. Application to counterclaims for abuse of process and violation of G. L. c. 93A. Counts three and four, the amended counterclaims alleging abuse of process and violation of G. L. c. 93A, § 11, respectively, are principally founded on the same factual allegations. Both counterclaims allege that the developer "wrongfully used process by bringing the [amended complaint] for ulterior purposes." With respect to the G. L. c. 93A counterclaim, the abutters additionally argue that the developer's alleged breach of the implied covenant of good faith and fair dealing violated G. L. c. 93A.[4] Considering both claims under the augmented Duracraft framework, we conclude that the developer met its burden at the threshold stage, and that the abutters failed to carry their burden at the second stage,

_____

[4] The amended counterclaim alleging violation of G. L. c. 93A generally incorporates factual allegations that precede it, but the only basis specifically identified as violating the statute is abuse of process.

Both in the Superior Court and on appeal, however, the abutters additionally identify breach of the implied covenant of good faith and fair dealing as a basis for the counterclaim. Having concluded that the claim for breach of the implied covenant of good faith and fair dealing is not colorable, and no argument having been raised as to any other basis for the G. L. c. 93A claim, we consider only abuse of process.

because the counterclaims objectively burden the developer's petitioning rights in this litigation.

a. Developer's threshold burden. The anti-SLAPP statute does not immunize a plaintiff from counterclaims that are "filed in response to the claim"; it does, however, provide respite from counterclaims that are based "solely on" that petitioning activity. Duracraft, 427 Mass. at 168 n.20. See Harrison I, 477 Mass. at 171 n.10. In this case, these counterclaims challenge the developer's contemporaneous actions in "bringing the present action," and "wrongfully using process by bringing the present action for ulterior purposes." In said circumstances, "an actionable abuse of process claim will always be, at least in part, based on a special movant's petitioning activities." Harrison I, supra at 168-171. Taking the counterclaims as they have been pleaded, the developer met its burden of establishing that they are based solely on the developer's petitioning activity. See id. at 171 n.11.

To be sure, the abutters allege that the developer filed its complaint for ulterior purposes, including

"(a) to force [the abutters] to refrain from opposing the penthouse variances sought by [the developer] in 2015; (b) to force [the abutters] to give up [their] property interest in the [parties' shared wall]; (c) to force [the abutters] to grant [the developer] an easement in a portion of [the abutters' property] in the event the building on [that property] was ever removed; (d) to force [the abutters] to agree to put a street on the [their property] in the area adjacent to the [developer's property] in the

> event the building on the [abutters' property] was removed;
> (e) to retaliate against [the abutters] for exercising
> their constitutional right to petition the government and
> protect [the abutters'] property rights; and/or (f) to
> force [the abutters] to spend thousands upon thousands of
> dollars defending the case."

While those allegations may be relevant to the abutters' claim that the developer had "ulterior purposes" for filing its complaint, our focus at the threshold stage is limited to determining whether the "the actual conduct complained of" is petitioning activity. See Harrison I, 477 Mass. at 170. The abutters do not claim that the alleged "ulterior purposes" themselves equate to abuse of process. We conclude, therefore, that the developer met its threshold burden of demonstrating that the abuse of process counterclaim has no substantial basis other than the developer's contemporaneous petitioning activity.

The same is true of the counterclaim alleging violation of G. L. c. 93A. The only conduct -- apart from breach of the implied covenant of good faith and fair dealing, a claim we have found not to be colorable -- that the abutters press as a violation of G. L. c. 93A is the developer's alleged abuse of process. No argument having been raised that any other conduct violates the statute, we conclude that the developer met its threshold burden as to this claim as well.

b. Abutters' second-stage burden. Because we conclude that the developer met its threshold burden with respect to the

abuse of process and G. L. c. 93A counterclaims, at the second stage "the burden shifts to the nonmoving party, here the [abutters]," as provided in the anti-SLAPP statute. Harrison I, 477 Mass. at 168. For the reasons stated, the abutters did not demonstrate, as the first path requires, that the developer's complaint was devoid of any reasonable factual support or arguable basis in law. See G. L. c. 231, § 59H. We therefore turn to the augmented second path, and consider whether the abutters established that the counterclaims were not SLAPP suits. See Blanchard I, 477 Mass. at 160. In that regard, we conclude that, while the counterclaims are colorable, see L.B. v. Chief Justice of the Probate & Family Court Dep't, 474 Mass. 231, 241 (2016), they objectively burden the developer's ongoing petitioning rights in this action. For that reason, the abutters cannot demonstrate that the counterclaims are not SLAPP suits. Therefore, the order denying the special motion to dismiss the counterclaims must be vacated.

i. Colorability. A counterclaim for abuse of process has three elements: (1) "process was used," (2) "for an ulterior or illegitimate purpose," (3) "resulting in damage" (quotation and citation omitted). Millennium Equity Holdings, LLC, 456 Mass. at 636. "Proof of the groundlessness of an action is not an essential element of an action for abuse of process." Fishman v. Brooks, 396 Mass. 643, 652 (1986). Thus, an abuse of process

counterclaim may be brought even where the plaintiff has a meritorious claim. It is, indeed, "immaterial that the process was properly issued, that it was obtained in the course of proceedings which were brought with probable cause and for a proper purpose or even that the proceedings terminated in favor of the person instituting or initiating them." Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 408 (2002). See Fishman, supra ("[a finding that] the person commencing the litigation knew or had reason to know his [or her] claim was groundless is relevant . . . as tending to show that the process was used for an ulterior purpose"). Much like a SLAPP suit, at its essence, abuse of process is a "form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money" (citation omitted). Fabre v. Walton, 436 Mass. 517, 519 n.3 (2002), S.C., 441 Mass. 9 (2004).

As to the first element, by filing its complaint, the developer invoked process. See Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 389 (1975). See also Harrison I, 477 Mass. at 169. Likewise, there is no real dispute concerning the second element. The abutters alleged, with supporting affidavits, that the developer's "ulterior" purpose in filing the lawsuit was to obtain collateral advantages, e.g., to compel the abutters to refrain from opposing the developer's efforts to

obtain variances, to surrender their property interests, to grant an easement, and to agree to the placement of a street. See Vittands v. Sudduth, 49 Mass. App. Ct. 401, 406 (2000) (abuse of process involves effort to "obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property" [citation omitted]).  We acknowledge as well that the damages for abuse of process include ongoing costs of defending the litigation, as the abutters claim.  See Millennium Equity Holdings, LLC, 456 Mass. at 645 (damages for abuse of process include "the costs of defending against the improper action").  Indeed, the abutters allege that one of the developer's ulterior motives in filing the complaint was to "force [the abutters] to spend thousands upon thousands of dollars defending the case."  The evidence was sufficient to state a colorable counterclaim that the developer's pursuit of the litigation was an abuse of process, because it was brought for an ulterior or illegitimate purpose.

As stated, the abutters' G. L. c. 93A counterclaim is based on the same factual allegations as their abuse of process counterclaim.  See note 4, supra.  That claim alleges that the developer's use of process for ulterior purposes violates G. L. c. 93A.  See Rental Prop. Mgt. Servs. v. Hatcher, 479 Mass. 542, 552 n.9 (2018), citing Refuse & Envtl. Sys., Inc. v. Industrial Servs. of Am., Inc., 932 F.2d 37, 43 (1st Cir. 1991) (litigation

that constitutes abuse of process may qualify as unfair and deceptive practice under G. L. c. 93A). Assuming, for purposes of discussion, as the developer has alleged, that the parties are engaged in trade or commerce, we are satisfied that there was no error in the judge's conclusion that a colorable claim for violation of G. L. c. 93A has been established.

ii. Retaliatory purpose. As the Duracraft framework was augmented in Blanchard I, an anti-SLAPP motion to dismiss may be defeated if the nonmoving party (here, the abutters) establishes, such that the motion judge can conclude with fair assurance, that the "primary motivating goal" in bringing the challenged claim was "not to interfere with and burden [the] defendant['s] . . . petition rights, but to seek damages for the personal harm to [it] from [the] defendant['s] alleged . . . [legally transgressive] acts.'" Blanchard I, 477 Mass. at 160, quoting Sandholm v. Kuecker, 2012 IL 111443, ¶ 57. This is an insurmountable burden in a case, such as this, where the "damages for the personal harm" are inextricably entwined with the contemporaneous conduct of the litigation itself. In that circumstance, the counterclaim objectively burdens the opposing party's contemporaneous petitioning rights by, among other things, raising the specter of mounting liability for defense costs and other damages associated with the ongoing litigation.

Viewed objectively, a defendant's primary motivation in that circumstance is to burden the plaintiff's petitioning rights by hanging the possibility of ever-increasing liability, like the sword of Damocles, over the plaintiff's head. That is precisely the scenario presented here.

The parties have had a contentious relationship for years. After the developer filed its complaint, the abutters twice sought dismissal: they filed both an anti-SLAPP motion to dismiss, and then a motion to dismiss pursuant to Mass. R. Civ. P. 12 (b) (6). Although the Massachusetts Rules of Civil Procedure provide no such mechanism, the abutters purported to file counterclaims "conditionally," which we take to mean that they would not press the claims, or seek associated damages, if the developer's complaint were dismissed.

Only after their efforts to dispose of the litigation failed, and the complaint was allowed to proceed, did the abutters amend the counterclaims to remove their supposed "conditional" nature. The abutters then sought damages, including attorney's fees and costs associated with defending the litigation, as well as for the individual defendant's "emotional stress and suffering as a result of being individually named as a defendant in this action."

Pragmatically, a counterclaim that is solely "based on" petitioning activity in the same action, and that seeks damages

for injury caused by that same petitioning, may not be defeated by following the augmented second path established in Blanchard I. In that circumstance, a party cannot establish, such that the "motion judge may conclude with fair assurance," that the claim does not give rise to a SLAPP suit.[5] Blanchard I, 477 Mass. at 160. The developer established that the counterclaims were solely based on its petitioning activities, as G. L. c. 231, § 59H, requires, and that there was no substantial nonpetitioning basis for them. At the second stage, because the abutters failed to demonstrate that the developer's claims were devoid of merit, as the first path of the augmented Duracraft framework provides, and they cannot establish that their counterclaims do not have a retaliatory purpose, as the

---

[5] We leave for another day the question whether a counterclaim for abuse of process, or an associated counterclaim alleging violation of G. L. c. 93A, is compulsory for purposes of Mass. R. Civ. P. 13 (a), as amended, 423 Mass. 1405 (1996). See Ladd v. Polidoro, 424 Mass. 196, 200 (1997) ("Where success or failure depends on the credibility of contesting parties, a litigant should not be subjected to the risk that, if the jury reject his or her position, that same jury [or another one] will conclude that he or she knew from the beginning that the claim was groundless").

In Harrison I, 477 Mass. at 176, we remanded the developer's abuse of process claim to the Superior Court "to allow the [developer] to show that its abuse of process claim is not a 'SLAPP' suit under the augmented Duracraft framework." Unlike the abutters' counterclaims, the developer's abuse of process claim does not implicate the abutters' concurrent petitioning rights but, rather, involves petitioning activities that have concluded.

second path provides, the developer's special motion to dismiss must be allowed.

6. <u>Conclusion</u>.  We caution against the weaponization of the anti-SLAPP statute.  In our view, it is not properly used either as cudgel to bludgeon an opponent's resolve to exercise its petitioning rights, or as a shield to protect claims that, although colorable, were brought primarily to chill another party's legitimate petitioning activity.  Applying that principle here, we conclude that a counterclaimant asserting damages caused by the conduct of the same proceeding, e.g., attorney's fees and costs, cannot establish that its counterclaim is not a SLAPP suit for purposes of the second stage of the <u>Duracraft</u> framework, as augmented in <u>Blanchard I</u>.  Viewed objectively, the primary motivation of such a claim is to burden the opposing party's petitioning rights.  See <u>Blanchard I</u>, 477 Mass. at 160.

The order denying the developer's special motion to dismiss is vacated, and the matter is remanded to the Superior Court for entry of an order allowing the motion.

<u>So ordered</u>.